Falconer v. Robinson.

## FALCONER *vs.* ROBINSON.

[BILL IN EQUITY FOR INJUNCTION.]

1. *Act to authorize governor to fill vacancies in certain county offices; not unconstitutional.*—The act of the general assembly of Alabama, entitled "An act to authorize the governor to fill vacancies in certain county offices," approved November 25, 1868, is not unconstitutional and void, but a valid constitutional act of the general assembly of this State, and authorizes the governor to fill all vacancies in the offices provided for by said act.

2. *Same; persons appointed under, hold for what term.*—Persons appointed by the governor, and duly commissioned by him, by virtue of said act, hold their office until the next general election to be held after such appointment.

3. *Same; not necessary to set out all laws repealed by.*—It was not necessary that the laws in conflict with said act, and repealed by the third section thereof, should be set out and contained in said act; said act is not a revisory or an amendatory act, within the purview and meaning of Art. 4, § 2, of the constitution of this State.

APPEAL from Chancery Court of Montgomery.

Heard before Hon. ADAM C. FELDER.

THE facts of this case are briefly these : On the 21st day of March, 1871, Patrick Robinson, the appellee, was ap-

pointed by the court of county commissioners tax collector of Montgomery county, and duly qualified as such, to fill the vacancy occasioned by the failure of the former tax collector, Falconer, to give an additional bond, &c. Shortly after this, Robinson made a demand upon Falconer for the books, papers, &c., of the office, but Falconer refused, and the probate judge, to whom Robinson had applied for an order, under the statute to compel the delivery of books, papers, &c., refused to grant the same, and sustained a demurrer to Robinson's complaint; and after this, both parties claimed to be, and acted as tax collector, and collected taxes, and gave notices, &c.

Robinson then filed his bill, alleging, in addition to the above facts, that Falconer is utterly insolvent, and has collected some taxes and the fees therefor, which by right should be collected by complainant, who, as he alleges, is the only legal tax collector; that by means of holding himself out as tax collector, &c., said Falconer has already interfered greatly with complainant in the discharge of his duties, and will do him irreparable injury if he is permitted to continue, &c., and collect the fees belonging to the office of tax collector. The bill prays that an injunction issue restraining Falconer from collecting taxes or fees, or in any manner exercising the rights or privileges of tax collector, and that upon the hearing said Falconer be compelled to produce and deliver the books and papers, &c. Upon bond being given, an injunction issued as prayed for.

Falconer's answer shows, that on the 17th of March, 1871, he was duly appointed by the governor of Alabama to fill the vacancy in the office of tax collector, and has since duly qualified, &c.; admits his insolvency, and denies Robinson's right in any manner to the fees of said office. Falconer also demurred to the bill for want of equity.

The chancellor overruled a motion to dissolve the injunction, &c., and hence this appeal.

FITZPATRICK, WILLIAMSON & GOLDTHWAITE, for appellant.
1. The first question arising in the cause is, can an injunc-

tion issue out of the chancery court, in such a case, restraining Falconer from exercising the duties of said office? The identical question came up before the chancellor of the State of New York in *Tappan v. Gray*, 9 Paige, 507. The injunction was prayed in that cause to restrain the defendant from exercising the duties and receiving the fees pertaining to the office of flour inspector, until the question involving the right to the office could be settled by legal proceedings which had been instituted for that purpose, and on the ground that the defendant was insolvent. The chancellor, although satisfied that the complainant was legally entitled to the office, decided that the " court of chancery had no jurisdiction or power to afford him any relief," and dissolved the injunction granted by the vice chancellor. The case was appealed to the court of errors, and affirmed by a unanimous court.—7 Hill, 259.

The same question came up again in the supreme court of New York, (24 Barlow, 265, *People v. Draper*,) in which the court, having both common law and chancery powers, an action of *quo warranto* was pending, and the injunction was prayed pending the law-suit and in aid thereof, and the court decided that in no case could the plaintiff be entitled to the aid of an injunction.

One insuperable objection to the exercise of this power by the chancery court is, that it would prevent the exercise of official duties in which the public have a high interest, merely to subserve the private interests of an individual. Is it not more important that the taxes should be collected for the benefit of the public, than that the complainant should be secured in fees to which he asserts a doubtful claim?—*People v. Draper*, 24 Bar. 265 ; *People v. Matlin*, 2 Ab. Pr. Rep. U. S. 289 ; *Hart v. Harvey*, 10 Ab. Pr. Rep U. S.

2. But on the facts set out in the bill of complainant, is not Falconer the rightful, *de jure* tax collector of Montgomery county ?

A solution of this question depends upon the validity of the act of the legislature of the 25th of November, 1868, (Acts, p. 351.) If this act is valid, there can be no two

opinions upon the right conferred thereby upon the governor to fill the vacancy in this office.. This right has been exercised by the two governors in this State since the passage of said act, without question, and an inspection of the registry of officers appointed, in the secretary of State's office, (being commissioned · by the governor, the court will take judicial notice of their appointments,) will show over one hundred and fifty appointments by the governor under said act. It is not unusual for the courts to advise with and consult the heads of departments as to their construction of acts regulating the practice of the departments.

But is not the act valid ? The only objection to it is, that it purports to amend, alter or change an existing law, and is thus obnoxious to section 2 of Art. IV of the constitution of Alabama. The true tests as to whether a law comes within the constitutional prohibition are, does the new law purport to amend or alter or amend any law ? Is the new law unintelligible with reference to an existing law ? If the new act is complete in itself, does not purport to amend or alter an existing law, and is intelligible as embracing a rule of law without resorting to any other law to ascertain the meaning of the new law, then it is valid. That provision of the constitution does not prevent a repeal of an existing law, or portion of law, by implication. The constitutional provision of Maryland is more comprehensive than ours, and the above rule is adopted in that State.—*Ex parte Pollard*, (Walker, C. J.) 40 Ala. 100 ; *Crow v. Drewry*, 15 Grattan, 1 ; *Davis v. State*, 7 Md 151 ; *Pinkinson v. State*, 14 Md. 18–21 ; Sedg. on Stat. and Con. Law, p. 27.

3. This appeal is allowed by act of the legislature of 1870–71, and is to be determined at the *first term*.—Acts 1870–71, p. 20.

RICE & CHILTON, *contra*.—The controlling question in this case is, whether section 493 of the Revised Code continues of force, or has been entirely repealed ? For it is manifest, that if that section remains of force at all, the

complainant's right to an injunction is clear, upon the facts stated in the bill and not denied in the answer.

That section is not an " election law," nor part of any " election law." It merely confers upon the commissioners court, in case of a vacancy in the office of tax collector, the power to *appoint* a person to fill such vacancy. It does not fix, or purport to fix, the term for which such appointee may hold the office. Its plain meaning is, that such appointee should hold only until a tax collector should be duly elected and qualified. Its object was to guard the public, the State and the county, against the obvious grievance of being without any tax collector at all. It is perfectly reconcilable with the act " to regulate elections in this State," approved October 8, 1868, (Pamph.' Acts 1868, pp. 269–289) ; and, not being an " election law,' is not repealed by section 99 of that act. The settled rule is, that " when two affirmative statutes exist, one is not to be construed to repeal the other ·by implication, unless they can be reconciled by no mode of interpretation." *Miles v. The State*, 40 Ala. 42.

Section 493 of the Revised Code can be obviously and easily reconciled with the act to regulate elections, until the actual occurrence of a certain event. Beyond doubt, the actual occurrence of that event supersedes the operation of the former in so far as that particular case is concerned ; or to speak more accurately, the occurrence of that event stops all further operation of section 493 of the Code in that particular case, and brings that case within the exclusive operation of the act to regulate elections. The event referred to, is the election and qualification of a tax collector under the act to regulate elections. Until such election and qualification, " the contrariety or repugnance " between section 493 of the Revised Code and the act to regulate elections, does not begin or exist. This is demonstrated by the reasoning and authorities found in *Miles v. The State*, 40 Ala. 39.

An " election law " is one which relates to or regulates elections, and is plainly different and distinguishable from a law which merely confers upon a court of record power

Falconer v. Robinson.

to appoint a person to hold an office (a mere *locum tenens*) until an election as to that office is held.

The constitutionality of the act to regulate elections in this State is conceded, because it seems to be " a law in itself complete, and original in form," and can be readily understood, and can operate independently, without reference to any former statute or law; " the full effect " can be determined without reference to any former act.—*Tuskaloosa Bridge Co. v. Olmstead*, 41 Ala. 9; *Weaver v. Lapsley*, 43 Ala.

This view renders the unconstitutionality of the act " to authorize the governor to fill vacancies in certain county offices," approved November 25, 1868, more glaring than it would be if the act to regulate elections were excluded from consideration. This act of November 25, 1868, is unconstitutional for three distinct and fatal causes: 1st, it can not have operation or effect except as an *amendment* of one or more of the provisions of the Revised Code, and it fails to "set forth " any provision of that Code; 2d, it can not have operation or effect except as an amendment of one or more of the provisions of the act to regulate elections in this State, and it fails to " set forth " any provision of that act; 3d, its second section provides that the appointee of the governor to fill the vacancy " shall hold office until the day of the next general election thereafter," whereas no appointee to fill a vacancy in a county office created by statute can, under the act to regulate elections, hold the office beyond the time when there is a person elected to that office and qualified, at a *special* election therefor, held under sections 10 to 16, inclusive, of the act to regulate elections.

On motion to dissolve an injunction, in vacation, all amendable defects in the bill will be considered as amended.—*Ala. & Flor. R. R. Co. v. Kenney*, 39 Ala. 307.

PECK, C. J.—An act passed by the general assembly of this State, and approved November 25, 1868, will be found in the book of Acts of that year, page 351. This act is in

Falconer v. Robinson.

the words following, to-wit: "An act to authorize the governor to fill vacancies in certain county offices. Sec. 1. *Be it enacted by the General Assembly of Alabama*, That the governor be, and he is hereby authorized and empowered, to fill any and all vacancies now existing, or which may hereafter exist, in the offices of county commissioners, treasurers, tax collectors and assessors, justices of the peace, constables, sheriffs, and all other county officers, except such officers whose appointments are otherwise provided for by law, by the appointment of some person to fill said vacancy.

"Sec. 2. *Be it further enacted*, That the person so appointed shall be duly commissioned, and shall hold office until the day of the next general election thereafter.

"Sec. 3. *Be it further enacted*, That all laws and parts of laws in conflict with this act, be, and the same are hereby repealed.

"Sec. 4. *Be it further enacted*, That this act shall take effect from and after its passage.

"Approved, November 25, 1868."

It is conceded, that if this is a valid act of legislation, then the bill of complaint of appellee, plaintiff in the chancery court, is without equity, but it is contended by appellee that said act is unconstitutional, and therefore null and void.

In considering the question of the constitutionality of an act of the legislature, the presumption is in favor of the validity of the act, and it is not to be declared void upon a mere conflict of interpretation between the legislative and the judicial power. Before proceeding to annul, by judicial sentence, what has been enacted by the law-making power, it should clearly appear that the act can not be supported by any reasonable intendment or allowable presumption.—Cooley's Con. Lim. 105 ; *The People v. The Supervisors of Orange*, 17 N. Y. 241. The rule is, that in the exposition of a statute, it is the duty of the court to seek to ascertain and carry out the intention of the legislature in its enactment, and to give full effect to such intention, and they are bound so to construe the statute, if

practicable, as to give it force and validity, rather than to avoid it and render it nugatory.—*Clark v. Rochester*, 24 Barb. 471 ; Cooley, 186.

If, after a careful examination, there is a reasonable doubt in the mind of the court, it is its duty to hold the statute to be constitutional.—Cooley, 182, and notes 2 and 3. Keeping these rules of construction in mind, we proceed to examine the constitutional objections made to this act.

First. It is objected that the subject of said act is not *clearly expressed in its title*, and, therefore, does not comply with article 4, § 2, of the constitution. So much of this section as is applicable to this question is in the following words : "Each law shall contain but one subject, which shall be clearly expressed in its title." The subject of this law is, by whom vacancies in certain county offices shall be filled. The title clearly expresses this : They are to be filled by the governor. But, it is said, you can not tell by this title what particular county offices are to be filled by him. This is true, but the title is not the place for that to be expressed ; that is a part of the matter and substance of the law, and the body of the law, and not the title, is the appropriate place to express it. To require it to be expressed in the title, would be to require the title to express, not only the subject, but also the matter and substance of the law. This objection, therefore, is not well taken.

Second. Another objection is, that this law is revisory and amendatory in its character, and does not contain the act or acts revised, or the section or sections amended, and so, does not comply with the latter part of said section 2, article 4, of the constitution. This latter part of said section 2 is as follows : "And no law shall be revised or amended, unless the new act contain the entire act revised, or the section or sections amended ; and the section or sections so amended shall be repealed." There is nothing in this law to warrant this objection. It does not claim to revise any law, or to amend any section or sections of any law or laws whatever.

It is a law original, independent, perfect and complete in itself, and does not pretend to revise or amend any law, but repeals all laws and parts of laws in conflict with it. A law can not be said to be either revised or amended, when it is abrogated altogether. A law is revised or amended, not when it is repealed, but when it is, in whole or in part, permitted to remain, and something is added to or taken from it, or it is in some way changed or altered to make it more complete or perfect, or to fit it the better to accomplish the object or purpose for which it was made, or some other object or purpose.

This act not only does not revise or amend any other law or laws; it does not even refer to any by name, but only generally, and for the purpose of repealing them. It is, in every sense, an original act, conferring new powers upon the governor, authorizing him to fill any and all vacancies in the county offices expressly named in it, and " all other county offices, except such officers whose appointments are otherwise provided for by law, by the appointment of some person to fill said vacancy." Probate judges, solicitors, and the clerks of the several courts are county officers, whose appointment, in case of vacancy, is provided for in the constitution, and therefore not embraced in this act. But it is urged by appellee's counsel, that if this act is held to be valid, it will clearly have the effect to amend several sections of the Revised Code, and sections of acts passed since, not one of which is contained or set out in said act; and, as an example, reference is made to section 922 of the Revised Code. Let it be admitted, for the sake of the argument, that it does have the effect to amend that section, it will not better the appellee's case, nor affect the validity of this act. The amendment is an amendment by implication merely, and, therefore, is not embraced within the purview and meaning of said section 2, article 4, of the constitution. A law, or a section of a law so amended, need not be contained in the act, by which an amendment by implication is effected.—Cooley, 152, note 3. After a careful examination, we are unable to discover any constitutional objection to said act. It must, therefore, be held to

be valid, and, being valid, the appellee's bill of complaint is without equity, and consequently the appellant's demurrer for that cause should have been sustained by the chancellor, and the bill dismissed.

As no benefit will result to appellee by remanding the cause, and as the public service may, and probably will be prejudiced by delay, the decree of the chancellor is reversed, and this court proceeds to render here the decree that should have been rendered in the chancery court:

It is, therefore, hereby ordered, adjudged and decreed, that the injunction heretofore granted in this cause be dissolved. It is further ordered, adjudged and decreed, that the appellee pay the costs of this court, and of said chancery court.

[NOTE BY REPORTER.—At a subsequent day of the term appellee applied for a re-hearing, and filed in support thereof the following argument :]

The constitution of Alabama, article iv, § 2, provides that "each law shall contain but one subject, which shall be clearly expressed in its title ; and no law shall be revised or amended unless the new law contain the entire act revised, or the section or sections amended ; and the section or sections so amended, shall be repealed."

Applying the above constitutional tests to the act of 25th November, 1868, entitled, "an act to authorize the governor to fill vacancies in certain county offices," we insist that said act is unconstitutional and void for the following reasons :

1st. The act is an amendment of a former law on the same subject, which it fails to set out or contain.

What was the object of this constitutional provision as to amendatory statutes ? Cooley on Const. Lim. p. 151, says : "The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty in mak-

ing the necessary examination and comparison, failed to become apprised of the changes made in the laws."

The supreme court of Alabama say, its object was, "to have the law amended, and the amending law presented in juxta-position to facilitate the comprehension and consult the convenience of all who examine the law after its enactment, as well as of the legislature which examines on its passage."— *Tuskaloosa Bridge Company v. Olmstead,* 41 Ala. 21.

If the act of 25th November, 1868, is an amendment of former law on the same subject, which it fails to contain, the fact that it is original in form and so fails to set out such former law or does not purport to amend such former law, would only make it more obnoxious to the constitutional provision.

But can any court say that because of this "originality of form" it is any less an amendment? That because it totally ignores former laws on the same subject it is any less obnoxious to the constitutional provision than the act mentioned, which simply referred to the section it purported to amend? Why should it be any less so? Can it give us a clearer idea than the first act, as to the existing law on the subject of which it treats? Does it, more than the other act, "consult the convenience or facilitate the comprehension of those who examine the law?"

So far from it, it imposes on the legislature, the courts and the people the necessity, and task of hunting out the laws in connection with which it shall operate and be construed, and that, too, without so much as intimating where they are to be found or that they are even in existence!

If the legislature may disregard and violate the constitution simply by putting the same law in one form instead of another, then the vitality of the constitution may be sapped; and the only difficulty connected with such an operation, is the question as to the form in which it may be done. The same thing done in one form, is a violation of the constitution; if done in another form, it is not a violation of the constitution. This is the substance of the

rule : that if a statute is original in form, complete and intelligible in itself, it may by implication revise and amend another law, without complying with the constitution ; but if that statute is not original in form, complete and intelligible, then it must comply with the constitutional requirement, and set out the law amended and revised. With all respect, we insist that such a distinction has no foundation in reason ; that the constitution knows no such distinction or rule ; and that on account of any inconvenience arising from this provision of the constitution, no court can properly make any such distinction or rule. *Saddler v. Langham,* 34 Ala. 335 ; Cooley's Con. Lim. 177.

Does the act, then, of the 25th of November, 1868, amend any former law on the same subject ?

Section 922 of the Code provides that " a county treasurer is appointed for three years, and until his successor is qualified, by the court of county commissioners in each county in the State, removable by such court whenever, in its opinion, the public good requires, and with power to declare and supply any vacancy."

Now, suppose the act of the 25th of November, 1868, had only applied to county treasurers, and had provided that section 922 of the Code be amended by striking out the words " and supply," in the last line of said section, and by adding to said section the words, " and the governor shall supply any such vacancy in said office." There can be no doubt that such an act would be an amendment. Does not the first section of the act of the 25th of November, 1868, if it is valid, as effectually make such an amendment as if it had declared so in terms ? It does, in effect, strike out the very words we have suggested, and add the very provision. There is no difference in effect. The only difference is one of form, in that the supposed act would purport to amend, while the act as it stands would amend without purporting.

If the first section of the act of the 25th of November is unconstitutional, standing alone, the only remaining question is, how far the defect is or can be cured by the repealing clause, (3d section,) which purports to repeal all

Falconer v. Robinson.

laws and parts of laws in conflict with the act. Giving the widest scope to this clause, what would be its effect on section 922 of the Code? It would only strike out the provision giving the court of county commissioners the right to fill a vacancy in the office of treasurer. It would simply take way the appointing power, without conferring it on any one. If that power, therefore, is conferred by any part of the act, it must be by the first section. But the third section of the act can have no force or effect as a repealing clause. We admit that any given section of the Code may be repealed by mere reference to its number, but we insist that a clause designed only to strike out a word, or clause, or sentence in a given section, would not be a repealing, but an amending act.

But it may be asked, if we insist that the act of 25th November, 1868, should contain all the numerous sections of the Code relating to the filling of vacancies in all the offices named? We reply, that the framers of the constitution never designed that an act of this kind should be passed. If the legislature had complied with the constitutional provision that "no law shall contain but one subject"—if this act had applied to county treasurer only, it would not have been difficult to set out the law amended. Containing the number of subjects it does, we admit the difficulty is great.

In conclusion, the title of the act does not clearly express its subject. The title is, "an act to authorize the governor to fill vacancies in certain county offices." If it be said that its subject is the conferring new power on the governor, we ask, what power? Does it confer on him the power to fill a vacancy in the office of sheriff, or of tax collector? The powers conferred by the act, cannot be discovered from the title. We submit this point without further argument, as being too plain to dwell upon. For the causes shown, the act is clearly unconstitutional.

The constitution requires that the subject should be "clearly expressed." Is it so in the title of this act? The words of the constitution are words of command.

If it be conceded that our constitution does not destroy

Falconer v. Robinson.

the doctrine of repeal by implication, still it is certain that when, as here, there is a clause of express repeal, that of itself excludes any repeal by implication. The same statute cannot repeal expressly and impliedly. The law will not imply a promise, when there is an express promise. Nor will it imply a repeal when there is a provision of express repeal. The simple expression of one only of the implications, which the law would have made but for that expression, is sufficient to exclude every implication but the one expressed.—*Henly v. Falconer*, 32 Ala. R. 540; *Webb v. Plummer*, 2 Barn. & Ald. 746.

The opinion of the supreme court delivered in this case, evidently treats repeal by implication as of importance. But it is suggested for the consideration of the court, that whenever it is established that the legislature may, by means of repeal by implication, destroy the force of *part* of any former law, without setting forth that former law, then and from thenceforth that provision of the constitution herein above cited, is practically nullified.

The act of the legislature here in question, is in no just sense a repealing act. The power of repeal, is not the principal power exercised in its passage. In its very nature it makes provisions upon subjects covered by former laws, and does not destroy, or purport to destroy, by repeal or otherwise, the whole of these former laws. It merely substitutes in the new act provisions different, in part, from the provisions of the former laws. According to every English and law dictionary, this new act is, in its very nature, amendatory or revisory. It is not a repealing act; it expressly repeals only what conflicts with it; and thus makes it wholly uncertain what part of the former law it does aim to change. It brings in the very evils which the constitutional provision above quoted was designed to prohibit.

With the highest deference to the court, it is confidently asserted that the opinion in this case is incapable of being reconciled with the opinions and principles of *Olmstead v. Tuskaloosa Bridge Company*, 41 Ala. R., and *Lapsley v. Weaver*, 43 Ala. Rep.

The following response was made by—

PECK, C. J.—We have very carefully re-examined the opinion in this case and feel persuaded of its correctness. The application for a re-hearing is denied.