THE PEOPLE ex rel. JOHN J. GRIFFIN, Appellant, *v.* AUSTIN LATHROP et al., Respondents.

The provisions of the act of 1884 (Chap. 312, Laws of 1884), as amended in 1887 (Chap. 464, Laws of 1887), giving to honorably discharged Union soldiers and sailors a preference for appointment and employment in all public departments, and imposing upon all public officers having the power of appointment the duty of a faithful compliance with the act, does not abrogate or repeal the power to discharge which existed prior to its passage.

In the absence of restraints imposed by the Constitution or by statute, the power of appointment to office implies the power of removal when no definite term is attached to the office by law.

Accordingly *held*, that the power given by the Constitution to the agent and warden of a state prison to appoint certain officers thereof, including keepers, gave to the warden the power of removal, and, assuming that the power is subject to legislative regulation, it was not abrogated by said act in the case of an honorably discharged soldier who had been appointed a keeper in a state prison.

Also, *held*, that even if the discretion of the appointing power was limited as to removals by said act, these restrictions were removed by the act of 1889 (Chap. 382, Laws of 1889), which confers power on the agent and warden to appoint and remove keepers.

Reported below, 71 Hun, 202.

(Argued March 12, 1894; decided April 10, 1894.)

APPEAL from an order of the General Term of the Supreme Court in the second judicial department, made May 8, 1893, which affirmed an order of Special Term denying an application for a peremptory writ of mandamus to compel the reinstatement of the relator as keeper of Sing Sing state prison. The facts, so far as material, are stated in the opinion.

*Horace D. Ellsworth* for appellant. Mandamus is the proper remedy to restore to relator his rights — to reinstate him. (*People* v. *M. Society*, 24 Barb. 570; *People* v. *M. P. Board*, 30 id. 527; *Adriance* v. *Suprs.*, 12 How. 224; *People* v. *Scrugam*, 20 Barb. 302.) Mandamus is the only remedy relator has. (*Sullivan* v. *Gilroy*, 8 N. Y. Supp. 401; Laws

of 1887, chap. 464.)    The act of 1887 (Chap. 464) confirmed
the relator's right to his position and employment as a keeper
in the prison.    (*People ex rel.* v. *French,* 5 N. Y. Supp. 712.)
The act of 1887 (Chap. 464) is in harmony with the section
of the Constitution creating the office of superintendent of
state prisons.    (Laws of 1873, p. 1406 ; *Killeen* v. *Angle,* 109
N. Y. 564.)    The legislature has power to limit, regulate and
control as to appointments by inspectors, superintendents,
wardens and keepers of the state prisons.    (Laws of 1874,
chap. 451 ; *People ex rel.* v. *Comstock,* 78 N. Y. 360 ; *People
ex rel.* v. *Dayton,* 55 id. 367, 378.)    The legislature has
assumed and exercised the right to legislate granted by the
amendment.    (Laws of 1877, chap. 464 ; Laws of 1889, chap.
382.)    The act of 1887 (Chap. 464), the soldiers' act, is in
harmony with the act of 1889 (Chap. 382), relating to and
regulating the control of the prisons.    (*In re Townsend,* 39
N. Y. 174 ; *Killeen* v. *Angle,* 109 id. 564; *People ex rel.* v.
*Potter,* 47 id. 375 ; *People* v. *Draper,* 15 id. 532 ; *People*
v. *Gilson,* 109 id. 397 ; *Board of Excise* v. *Barry,* 34 id.
666 ; *People ex rel.* v. *Durston,* 119 id. 577 ; *In re N. Y.
E. R. R. Co.,* 70 id. 342 ; *People ex rel.* v. *Comstock,* 78 id.
356 ; *Kerrigan* v. *Force,* 68 id. 385.)    The legislature has
recognized the limitations upon its power in regard to appoint-
ments by the superintendent of public works, as distinguished
from its power in regard to appointments by the superin-
tendent of state prisons.    (*People ex rel.* v. *Lathrop,* 71
Hun, 202.)

*T. E. Hancock, Attorney-General,* for respondent.    The
legislature was powerless to regulate the appointment or
removal of officers in the prisons of the state.    (Const. N. Y.
art. 5, § 4; Id. art. 10, § 3 ; *People ex rel.* v. *Angle,* 109 N.
Y. 564 ; *Menges* v. *City of Albany,* 56 id. 374; *Barker* v.
*People,* 3 Cow. 686 ; *People ex rel.* v. *Keeler,* 29 Hun, 175 ;
*People ex rel.* v. *Durston,* 3 N. Y. Supp. 522 ; *Sims* v. *Fire
Comrs.,* 73 N. Y. 437 ; *Weidman* v. *Bd. of Education,* 26 N.
Y. S. R. 765 ; Civil Service rule 45.)

O'BRIEN, J.   The relator, an honorably discharged soldier, had served for many years as a keeper in the state prison at Sing Sing, from which position 'he was discharged by the agent and warden in September, 1891, without any charges being made against him or any fault on his part in regard to the performance of the duties of the place.   Another honorably discharged soldier was appointed in his place.   The relator applied to the court for a peremptory writ of mandamus to compel his reinstatement, which was denied, after a hearing, and the order has been sustained by the General Term.

The sole question presented by the appeal is one of power. If the agent and warden had the legal authority to discharge the relator and appoint another person in his place the court cannot control the use of this power nor interfere with the exercise of discretion or advise the officer touching the performance of his duties.   The discharge of the relator might not be regarded, under all the circumstances, as just or wise, but the courts have nothing to do with these questions.   We have the right to look into the question of power, but the writ demanded by the relator could not issue except to require the superintendent or warden to perform some act which the relator could demand as a legal right.   The contention in behalf of the relator is, that he was illegally discharged, and that he is entitled to be reinstated in the position from which he was removed and this by force of the terms of the statute. (Laws of 1887, ch. 464.)   By that act the legislature has declared that " In every public department and upon all public works of the state of New York, and of the cities, towns and villages thereof, and also in non-competitive examinations under the Civil Service Laws, rules or regulations of the same, wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment; age, loss of limb or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties involved."

The second section provided that " all officials or other per-

sons having power of appointment to, or employment, in the public service, as set forth in the first section of this act, are charged with the faithful compliance with its terms, both in letter and spirit, and a failure therein shall be deemed a misdemeanor."

It will be seen that though this statute prescribes the duty of officers possessing the power of appointment, it contains no language that abrogates or repeals the power to discharge which existed before its first enactment in 1884. By section 4, article 5 of the Constitution the appointment of certain officers in the prisons, including guards or keepers, is vested in the agent and warden. The language of the section is such as to justify the inference that this power was subject to legislative regulation. Assuming that it is, the question arises whether the legislature has, in fact, made any regulation abrogating or in any way restricting the power of the agent and warden to remove his appointees at his discretion. In the absence of restraints imposed by the Constitution or by statute the power of appointment implies the power of removal when no definite term is attached to the office by law. (*People ex rel. Cline* v. *Robb et al.*, 126 N. Y. 180.)

It is quite clear, therefore, that prior to the enactment of the statute, upon which the relator relies, he could have been discharged at the discretion of the warden. The statute has not abrogated this power. In fact it is silent on the subject of the power to discharge and only imposes a duty upon the appointing officer when making appointments to prefer honorably discharged soldiers. But even that duty is not imposed by the statute in absolute or unqualified terms, but it is left to the judgment and discretion of the appointing power to determine in each case whether or not the soldier claiming the preference possesses the business capacity necessary to discharge the duties of the place. If the officer authorized to make an appointment refuses to perform the duty imposed by this statute, or acts in bad faith, or abuses the discretion reposed in him, he may be subject to indictment or impeachment, or both, but the power of removal is not abrogated or

restricted.  The duty of the warden in making appointments
of guards and keepers in the prisons is of the most important
and delicate nature.  The appointees should be capable of
forming a correct judgment in regard to the conduct of
prisoners, able to discern their motives and purposes and to
meet an emergency when necessary.  They should possess the
necessary qualities of temper, courage and loyalty.  No
statute can be drawn so as to describe an ideal appointment to
a place the duties of which involve the care and control of
convicts in the prisons of the state.  The selection in the end
must be left to the discretion and judgment of some one, and
this the statute fully recognizes.  To compel the superintend-
ent or warden, charged with the management of the prisons
and responsible for the manner in which the duty is discharged,
to reinstate, against his judgment, a discharged keeper or
guard would introduce into prison management a most mis-
chievous principle.  It might and probably would produce
great demoralization and tend to the destruction of all order
and discipline.  It would have much the same effect upon
prison discipline, though perhaps in a less degree, that it would
have upon military discipline if appointments and removals
in the army were to be regulated by the writ of mandamus.

The case has thus far been considered without reference to
another statute.  (Laws of 1889, ch. 382.)  This statute in
express terms confers power upon the agent and warden to
appoint the keepers and to remove them.  It expressly applies
to the prisons and was enacted subsequent to the statute giv-
ing preference in certain cases to soldiers, and subsequent to
the Civil Service Laws.  It leaves the appointment and
removal of keepers and guards in the prisons to the judgment
and discretion of the agent and warden, subject to the
approval of the superintendent.  It enacts the same policy
outlined in the Constitution itself, and which the legislature
did not intend to disturb by the so-called Soldier Law of 1887.
But even if this were otherwise and it could be maintained
that the discretion of the appointing power is restricted by the
former act, then these restrictions must be deemed to be removed

by the later statute which alone contains the rule upon which appointments and removals in the prisons must be regulated. So the discharge of the relator was within the power and discretion of the agent and warden. It is within the same discretion to reinstate him or not, and hence the writ of mandamus was properly refused.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.