PEOPLE ex rel. FOLEY *v.* BD. OF EDUCATION.   417

Hun.]          SECOND DEPARTMENT, FEBRUARY TERM, 1895.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. CORNELIUS FOLEY, Relator, *v.* THE BOARD OF EDUCATION OF LONG ISLAND CITY, Respondent.

*Board of education of Long Island City — power of appointment and removal of employees — chapter 461 of 1871 — chapter 716 of 1894.*

Under the provisions of subdivision 2 of section 2 of chapter 2 of title 9 of chapter 461 of the Laws of 1871, the board of education of Long Island City is authorized to employ an engineer to take charge of the heating system of the public schools in said city, and there is no limitation or restriction upon the power of such board to discharge its employees for a just cause; in such case the power of appointment implies the authority to remove.

The improper refusal of an employee of the board of education of Long Island City, who is an honorably discharged soldier, to obey a reasonable order of such board, will be deemed conduct inconsistent with the position which he holds within the meaning of section 1 of chapter 716 of the Laws of 1894, and will justify his removal.

*Quære,* as to whether the sufficiency of the reasons for the exercise of its power to remove its employees by the board of education of Long Island City must be determined primarily by such board, and as to whether the courts have anything to do with the reason or justice of removals made by it.

CERTIORARI issued out of the Supreme Court and attested on the 21st day of September, 1894, directed to the board of education of Long Island City, commanding it to certify and return to the office of the clerk of the county of Queens its proceedings and all things appertaining to the discharge of the relator from service as engineer in a school in Long Island City.

*Lyman W. Redington,* for the relator.

*William E. Stewart,* for the respondent.

DYKMAN, J.:

This is a proceeding by certiorari to review the action of the board of education of Long Island City, which resulted in the removal of the relator from the position of engineer in charge of the heating apparatus of School No. 7 in the fifth ward of that city.

The facts are contained in the return of the board as follows: On or about the 14th day of March, 1893, the relator was given charge of the heating apparatus then in School No. 7 in the fifth

ward, Long Island City, until one Evers, who had formerly been in charge and was then ill, should recover his health. On or about the 21st day of March, 1893, the board of police of Long Island City issued a second-class engineer's certificate to the relator. The temporary appointment of the relator was made by one of the school trustees of the city, and thereafter the board of education of the city removed the relator and appointed one Thomas Curran. Thereafter the relator applied for a mandamus, which application was opposed by the board of education for the reason and upon the ground that the school trustees were only authorized by law to appoint janitors, the power to appoint engineers being vested in this respondent, as it was advised. The relator claimed the right to hold the office for the reason that he was an honorably discharged soldier, and for the further reason that the board of education had ratified his appointment by paying and recognizing him; the application for the mandamus was granted, and on or about the 25th day of April, 1894, in obedience thereto, the relator was reinstated as engineer in charge of the heating apparatus in School No. 7 in the fifth ward of Long Island City.

Between the date of the removal of the relator in 1893, and his reinstatement in May, 1894, the entire heating apparatus in said school had been changed from hot-water boilers to a steam-boiler engine and complicated machinery, and this respondent assumed that it was entitled to know that the relator was competent and qualified, and for that reason directed him to present himself to be examined by an expert for a certificate of the first class.

The expert, Thomas Mulligan, notified the respondent that the relator did present himself at the time and place fixed by such expert, but refused to submit to an examination as required by resolution of this respondent, and by a further resolution, passed May 16, 1894, the board of education directed the relator to present himself at its rooms in the city hall, in Long Island City, on the 18th day of May, 1894, and submit to an examination or show cause why he should not be punished for refusing to obey the orders of this respondent.

On the said 18th day of May, 1894, the said relator appeared before the board of education, and without awaiting the arrival of Thomas Mulligan, the examining engineer, positively refused to

submit to an examination. Thereafter, and on the 23d day of May, 1894, the board of education, by a notice, a copy of which is annexed to the return, again directed said Foley, the relator, to appear before it, at its rooms in the city hall, at eight o'clock in the evening of Friday, May 25, 1894, and submit to an examination by Thomas Mulligan, the expert designated by the board, as to his qualifications and competency as an engineer or show cause why he should not be punished for refusing to obey the orders of the board of education. On the said 25th day of May, 1894, the relator, Foley, presented himself before the board of education and in an insolent and boisterous manner refused to be examined as to his qualifications and competency as an engineer, and positively refused to obey the orders of the board of education; thereupon the board of education passed a resolution dismissing him for his refusal to obey the orders of the board of education, a copy of which order is annexed to the return. There is no provision in the charter or laws of Long Island City authorizing the employment of engineers in the public schools, for the reason that when said charter and the amendments thereto were at different times passed, the school buildings were old frame structures heated by ordinary coal stoves. Within the past few years other and more substantial structures have been erected, and more recently approved appliances for heating have been added to the school buildings.

The claim of the relator is, that the board of education was vested with no power to appoint or remove an engineer, but that argument, if allowed its full force and traced to its legitimate result, will prove too much to be beneficial to the relator. If the board had no power of appointment, then he was not duly appointed and never was entitled to the position of engineer. We do not, however, deem the position tenable. The relator is not an officer, and has no official position; he is simply an employee of the board of education. There is no statutory provision for the employment of an engineer for the public schools in Long Island City.

The authority of the board to employ an engineer must be sought in subdivision 2 of section 2 of chapter 2 of title 9 of chapter 461 of the Laws of 1871, which is as follows:

"The board of education shall have power   *   *   *   to employ and to discharge teachers, to designate their duties and to fix their

salaries, to employ necessary workmen and to provide necessary materials for repairing, altering and enlarging public school buildings or other buildings connected therewith."

That subdivision imparts the power to employ necessary workmen, and the relator must fall under that denomination, and the section seems to be sufficiently broad to justify his employment. After the changes in the system of heating in the school had been made the board of education adopted the following rules and regulations, among others :

" Art. XII, § 2. The janitor shall have charge of the heating apparatus, except when an engineer is employed.

" Art. XII, § 4. In any school, where the services of a licensed engineer are required, said engineer shall occupy the living apartments therein, and shall have control of the janitor of said school, and be responsible for the proper care of the school premises. During the school sessions when steam pressure is on the boilers the engineer must remain in and about the boiler room, and under no circumstances absent himself from the building. The engineer shall receive and receipt for all janitor or engineer's supplies or material delivered for the use at school building where he may be employed."

There is no limitation or restriction upon the power of the board of education to discharge its employees for a just cause, and there should be none. In such a case the power of appointment bestows the authority for removal also. (*People ex rel. Cline* v. *Robb*, 126 N. Y. 180; *People ex rel. Griffin* v. *Lathrop*, 142 id. 113.)

The sufficiency of the reasons for the exercise of the power of removal must be determined primarily by the board. In the case of *The People ex rel. Griffin* v. *Lathrop* it was said that the court had nothing to do with the reason or justice of the removal. That was a proceeding by mandamus to compel the reinstatement of the relator as a keeper of the State prison at Sing Sing, and we assume that the same rule will apply here. If, however, it does not, we have no difficulty in approving of the action of the board in the removal of the relator. Steam is exceedingly dangerous, whether it be utilized as a propulsive power or as an agent for heating buildings. The machinery for its utilization is complicated, and its use cannot be committed to persons unskilled in its operation without

extreme hazard.   The results of a mistake might, and probably would, be disastrous to both persons and property.   Many children are gathered together while the steam is in use during the day, and an explosion would be certain to result in injury or death to many.

The relator held a second-class engineer's certificate from the board of police of Long Island City, which certified to his competency to take charge of a particular steam boiler and engine at the fifth ward public school in Long Island City.   It does not appear where that was, but the certificate was second class, and the members of the board and their expert all deemed it necessary that the relator should be re-examined.   We concur in that conclusion, because the perils of the position require first-class qualification.

The relator contends, further, that he is an honorably discharged soldier and served as such in the Union army during the war of the Rebellion, and claims immunity from discharge for that reason.   The statute upon that subject has been changed, and, without relating its transformation, it is sufficient to state its present form, which is this : "In all cases, the persons having the power of employment or appointment, unless the statute provides for a definite term, shall have the power of removal only for incompetency and conduct inconsistent with the position held by the employee or appointee." (Laws of New York, 1894, chap. 716, § 1.)

Under that provision, therefore, the board of education possessed the power of removal for incompetency and inconsistent conduct. The reason for the removal was the refusal of the relator to obey an order of the board, and our examination has been sufficient to manifest the reason and justice of the order.

It follows necessarily that the refusal of the relator to obey the order was improper, and may, therefore, be deemed conduct inconsistent with the position which he held within the meaning of the statute.

