UNITED STATES ex rel. PALMER v. LAPP, U. S. Marshal.

(Circuit Court of Appeals, Sixth Circuit.   June 30, 1917.)

No. 2975.

1. UNITED STATES MARSHALS ☞3—DEPUTY MARSHALS—APPOINTMENT AND REMOVAL.

Under Act Oct. 22, 1913, c. 32 (38 Stat. 208), providing that any deputy collector of internal revenue or deputy marshal, who may be required by law or by authority or direction of the collector or marshal to execute a bond, may be appointed by the collector or marshal who may require such bond without regard to the Civil Service Act, Jan. 16, 1883, c. 27, 22 Stat. 403, and the amendments thereto, or any rule or regulation made in pursuance thereof, and that the officer requiring such bond shall have power to revoke the appointment of any subordinate officer or employé and appoint his successor, at his discretion, without regard to such acts, amendments, rules, or regulations, the power of appointment may be exercised by the marshal according to his individual discretion, as the grant of a general power to appoint carries with it the right to remove at any time or in any manner deemed best, with or without notice.

2. UNITED STATES MARSHALS ☞3—DEPUTY MARSHALS—APPOINTMENT AND REMOVAL.

Act Oct. 22, 1913, concerning the appointment and removal of deputy marshals, is in conflict with Act Aug. 24, 1912, c. 389 (37 Stat. 555), under which no person in the classified civil service could be removed except for cause and upon notice and an opportunity to answer the charges, and the act of 1912 must yield so far as the removal of deputy marshals is concerned.

3. MANDAMUS ☞16(1)—GROUNDS FOR DENIAL—WRIT INEFFECTUAL OR FRUITLESS.

Under Act Oct. 22, 1913, where a United States marshal removed a deputy marshal appointed prior to the enactment of that act, without requiring him to execute a bond, and then revoking his appointment and naming his successor, a writ of mandamus would not be issued to compel the deputy marshal's reinstatement, as it would be fruitless, since it could be avoided by the marshal through mere demand of a bond and notice that the appointment would be revoked upon presentation of the bond.

4. UNITED STATES MARSHALS ☞3—DEPUTY MARSHALS—APPOINTMENT AND REMOVAL.

It was within the power of Congress to authorize United States marshals to revoke the appointment of deputy marshals at their discretion, as was done by Act Oct. 22, 1913.

5. UNITED STATES MARSHALS ☞3—DEPUTY MARSHALS—APPOINTMENT AND REMOVAL.

That the Act Oct. 22, 1913, as to the appointment and removal of deputy marshals, was a rider to an appropriation bill, cannot affect its construction.

6. OFFICERS ☞7—POWER TO REMOVE.

In the absence of constitutional or statutory regulations, the power of appointment carries with it, as an incident, the power to remove, when no definite term is attached to the office by law.

7. OFFICERS ☞7—POWER TO REMOVE.

When an appointee holds an office at the will and discretion of his superior having the power of appointment, he is subject to removal at pleasure.

8. UNITED STATES ☞36—REMOVAL OF OFFICERS—REVIEW.

The civil service regulations made by the civil service commissioners and the President, and promulgated by the President, do not have the

force and effect of law, nor can the courts enforce them as such, or review the action of an appointing officer in removing an employé, though the President may enforce them by removing any person who refuses to abide by them.

9. STATUTES ⬤131—AMENDMENT—NATURE OF AMENDMENT.

An amendment to a statute may be effected by a mere addition thereto, in the absence of a constitutional prohibition, as a law is amended when it is, in whole or in part, permitted to remain, and something is added to or taken from it, or it is in some way changed or altered to make it more complete or perfect, or to fit it the better to accomplish its object or purpose.

10. STATUTES ⬤225½—CONSTRUCTION—GENERAL AND SPECIAL STATUTES.

General legislation must give way to special legislation on the same subject, whether the provisions are found in the same statute or in different statutes, and generally the provisions must be so interpreted as to embrace only cases to which the special provisions are not applicable.

11. CONSTITUTIONAL LAW ⬤70(3)—JUDICIAL FUNCTIONS—WISDOM OF STATUTES.

The courts may not question the wisdom of a statute.

12. UNITED STATES MARSHALS ⬤3—DEPUTY MARSHALS—APPOINTMENT AND REMOVAL.

Under Act Oct. 22, 1913, a deputy marshal could be removed by the marshal without notice or a hearing.

13. MANDAMUS ⬤76—REMOVAL OF OFFICERS—DISCRETION.

As under Act Oct. 22, 1913, a United States marshal may remove a deputy marshal at his discretion, a writ of mandamus will not issue to control such discretion, as in exercising his power to remove the marshal does not act in a judicial capacity.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John E. Sater, Judge.

Mandamus by the United States, on relation of Charles H. A. Palmer, against Charles W. Lapp, United States marshal for the Northern district of Ohio. The writ was denied, and relator brings error. Affirmed.

W. L. Flory, of Cleveland, Ohio, for plaintiff in error.

Jos. C. Breitenstein, Asst. U. S. Atty., of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. The United States marshal for the Northern district of Ohio revoked the appointment of his chief office deputy, and the court below refused to issue a writ of mandamus to compel the marshal to reinstate the deputy. The facts on which the mandamus proceeding was based and the reasons for denying the writ appear in the trial judge's· opinion, hereafter set out. In our judgment the writ was rightly denied, and, subject to some explanation, we approve of the reasoning on which refusal of the writ was based. It is true that at the time the relator, Palmer, received his last appointment as chief office deputy, August 4, 1913, he belonged to the classified civil service; and that according to section 6 of the act of August 24, 1912, c. 389, 37 Stat. 555 (Comp. St. 1916, § 3287), "no person in the classified civil service" could be removed except for such cause

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as would "promote the efficiency of said service, and for reasons given in writing" and upon notice, service of a copy of any charges preferred, and allowance of a reasonable time to answer the charges in writing. It is to be observed of this provision that in terms it applies generally to all persons engaged in the classified civil service; and admittedly the legal removal of relator could have been effected only through observance of the mode prescribed by that act if no other legislation had intervened. However, on October 22, 1913, an act was passed in which it was provided, in paragraph entitled "Civil Service Commission" (38 Stat. pt. 1, p. 208):

"That hereafter any deputy collector of internal revenue or deputy marshal who may be required by law or by authority or direction of the collector of internal revenue or the United States marshal to execute a bond to the collector of internal revenue or United States marshal to secure faithful performance of official duty, may be appointed by the said collector or marshal, who may require such bond without regard to the provisions of an Act of Congress entitled 'An act to regulate and improve the civil service of the United States,' approved January sixteenth, eighteen hundred and eighty-three, and amendments thereto, or any rule or regulation made in pursuance thereof, and the officer requiring said bond shall have power to revoke the appointment of any subordinate officer or employé and appoint his successor at his discretion without regard to the act, amendments, rules, or regulations aforesaid."

[1] It will be noticed that this provision is special in its terms and application; it relates distinctly and only to deputy collectors and deputy marshals and their principals, respectively; and the right to revoke appointments of either of these classes of deputies and to appoint successors is discretionary in the several collectors and marshals; that is, such power of revocation and appointment may be exercised by those officials according to their individual discretion, since "the grant of a general power to remove carries with it the right to remove at any time or in any manner deemed best, with or without notice." Eckloff v. District of Columbia, 135 U. S. 240, 241, 10 Sup. Ct. 752, 34 L. Ed. 120.

[2] Judge Sater was undoubtedly right in applying the established rule that, where there is any conflict between a general statutory provision and a special one upon the same subject, the former must yield to the latter regardless of the fact that the two provisions are found in different enactments. It is to be presumed, for example, that by the special act here involved Congress intended to create an exception as respects the appointment and removal of these two classes of deputies. That there is conflict between the two enactments, the one of 1912 and the other of 1913, concerning deputy collectors and deputy marshals who belong to the classified civil service, seems clear enough. The act of 1912, as we have seen, is comprehensive in its application to all persons "in the classified civil service," and it forbids their removal except in accordance with the formal mode there prescribed; while the act of 1913 authorizes summary removal and appointment of the two classes of deputies mentioned, one of which, through express official designation, includes relator. This conflict is accentuated by the fact that the removing officer is invested with power to appoint a successor regardless of the Civil Service Act of January 16, 1883. True, the scheme of this last-mentioned act is

not directly to provide for removal from office, but it is to discourage unmerited removal by requiring vacancies to be filled only with persons who have passed competitive examinations according to requirements of the act or of rules adopted in pursuance of it. 22 Stat. 403, 406, §§ 2, 7 (Comp. St. 1916, §§ 3272, 3278); Flemming v. Stahl (D. C.) 83 Fed. 943, 944; Woods v. Gary, Postmaster General, 25 Wash. Law Rep. 591, 594, 595; Page v. Moffett (C. C.) 85 Fed. 38, 40. It is therefore not open to relator to claim both protection of the act of 1912 and exemption from that of 1913, upon any theory of lack of conflict between the two acts.

[3-5] There is another feature of the act of 1913 which deserves attention. Applying its language concretely, after the passage of the act the marshal might have required relator to execute a bond to him to secure faithful performance of official duty, and thereupon have revoked relator's appointment and named his successor, at the marshal's discretion. This does not appear to have been the method chosen. Its adoption, however, would have been, at most, a mere formality; and the allowance of a writ of mandamus would have been fruitless, since it could have been avoided by the marshal through mere demand of a bond and notice that the appointment would, upon presentation of the bond, be revoked. It results that, for reasons satisfactory to Congress, official positions like that of relator were taken out of the restraints of civil service legislation, including the restraint of the act of 1912, and placed within the plenary power and control of the marshal. The subject was within the power of Congress, and it is vain to urge that the courts can rightfully interfere with such legislation. The point that the act of 1913 was a "rider" to an appropriation bill cannot affect construction; and it should not be overlooked by relator's counsel that the act of 1912, upon which they rely, is of the same character.

The judgment must be affirmed.

The opinion of the learned trial judge follows:

SATER, District Judge. The relator, Palmer, claiming an unlawful revocation of his appointment as chief office deputy of the United States marshal, prays that a writ of mandamus issue requiring his restoration by the defendant to that position.

The relator, as a duly qualified person, was in 1892 appointed to a position in the competitive classified civil service in the post office department of the city of Cleveland. With the consent of the proper governmental departments, he was in 1910 transferred to the marshal's office, following which, to validate such transfer, he took a noncompetitive examination, was passed to the classified service, and filled the position of chief office deputy under the defendant's predecessor. On August 4, 1913, the defendant, after his designation and qualification as marshal, regularly appointed the relator as his chief office deputy at a salary of $2,000 per year, who thereupon qualified and entered upon the discharge of his duties. On January 13, 1916, defendant informed him of an intended change in his position, and at his instance cheerfully gave him a letter recommending him as a

capable, painstaking, industrious man, who can prove his worth in any capacity, and who, in so far as the defendant knew, had excellently kept the records of the marshal's office. The parties discussed, as between themselves, the proposed change from time to time, and on February 8 the relator notified the defendant that he could not be removed from his position unless the defendant complied with the act of August 24, 1912 (37 Stat. 555), which provides, in so far as need be noticed, that no person in the classified civil service shall be removed therefrom, except for such cause as will promote the efficiency of the service and for reasons given in writing, and that the accused person is entitled to notice of his intended removal and of any charges preferred against him, and to a copy thereof, and also to reasonable time personally to answer the same in writing. The defendant having designated, with the assent of the Department of Justice, another person to succeed the relator, informed him on February 9 that the appointment of his successor would become effective on February 15. The relator at all times expressed a willingness to instruct his intended successor as to the duties devolving upon the chief office deputy, but disclaimed that such willingness should be construed as an acquiescence on his part to his ousting and to the appointment of his successor. He made known to defendant his readiness and willingness to perform the duties devolving on him in his position, that he would insist that he was entitled to continue therein until removed in accordance with the above-mentioned act, and that he would continue to claim compensation until his removal was thus made. On February 14 he was notified by the defendant in writing of the revocation of his appointment, the same to become effective on February 15. When he presented himself on the 16th and offered to continue the performance of his duties as before, he was refused permission so to do. He thereupon in writing tendered his services and demanded permission to discharge the duties pertaining to his position. The tender and demand were rejected and his salary discontinued. His successor, having qualified, was installed as chief office deputy. The relations between the parties continued friendly down to and including February 15. The defendant testified that he still thinks that the relator is a capable man. The expressed cause for revocation of the appointment was political reasons, no other cause therefor being given to the relator, or, in so far as the record shows, to any other person. The only other matter which was known to the defendant prior to February 16, and which, although unexpressed, influenced him, according to his evidence, in recalling the appointment, was brought out in the evidence taken under exception that the relator was the cause of disharmony in the office, due, it would seem, to orders given by him and his suggesting his own friends as guards in nearly all instances for the removal of prisoners, the other deputies feeling that they ought to have their friends to make such trips; but it does not appear that the persons thus suggested were not competent or rendered inefficient service, or what the character of the orders were, the inference being that they pertained to the conduct of the business of the office. At the time of the hearing the court was and is still of the

opinion that, in whatever aspect the case is viewed, the evidence as to the undisclosed want of harmony was unimportant; for, if the relator could be removed only in the manner specified in the act of August 24, 1912, his ousting was unlawful, and, on the other hand, if the provisions of such act were not applicable to the relator's case on account of his being no longer protected in his position, as claimed by defendant, by. the civil service law, the defendant was at liberty, at his pleasure, to revoke the appointment. If such act is not applicable, and if the act of 1913 were silent on the power to revoke, the right so to do might still exist (People v. Lathrop, 142 N. Y. 113, 116, 36 N. E. 805); but this point need not be decided.

[6-8] In the absence of constitutional or statutory regulations, the power of appointment carries with it as an incident the power to remove when no definite term is attached to the office by law. Re Hennen, 13 Pet. 230, 259, 10 L. Ed. 136; Parsons v. United States, 167 U. S. 324, 331, 17 Sup. Ct. 880, 42 L. Ed. 185; Morgan v. Nunn (C. C.) 84 Fed. 551, 552; People v. Robb, 126 N. Y. 180, 182, 27 N. E. 267; People v. Fire Com'rs, 73 N. Y. 437. When an appointee holds at the will and discretion of his superior, he is subject to removal at pleasure, the power of removal residing in the person in whom is vested the power of appointment. Re Hennen, 13 Pet. at page 259; Keim v. United States, 177 U. S. 293, 294, 20 Sup. Ct. 574, 44 L. Ed. 774; Robertson v. Coughlin, 196 Mass. 539, 542, 82 N. E. 678, 13 Ann. Cas. 804. It is also well settled that civil service regulations made by the civil service commissioners and the President, and promulgated by the latter, do not have the effect and force of law, nor can the courts enforce them as such, or entertain jurisdiction to review the action of an appointing officer in removing an employé. The President, nevertheless, may enforce them by removing any person who refuses to abide by them. Morgan v. Nunn (C. C.) 84 Fed. at page 553; Flemming v. Stahl (D. C.) 83 Fed. 940, 941; Page v. Moffett (C. C.) 85 Fed. 38; Carr v. Gordon (C. C.) 82 Fed. 373, 379; Taylor v. Taft, 24 App. D. C. 95. The act of August 24, 1912, however, specifically defines the conditions on which removals from the classified civil service list may be effected. The defendant did not, in eliminating the relator and substituting another in his stead, comply with the requirements of that act. His position, the correctness of which is controverted by relator, is that his action is fully warranted by the act of October 22, 1913 (38 Stat. 208, c. 32), which provides that any deputy marshal, who may be required by law or by authority or direction of the United States marshal to execute a bond to such marshal to secure the faithful performance of official duties, may be appointed by the marshal requiring such bond without regard to the provisions of the act of Congress to regulate and improve the civil service, approved January 16, 1883 (22 Stat. 403), and the amendments thereto, or any rule or regulation made in pursuance thereof; and the marshal so requiring such bond shall have power to revoke the appointment of any subordinate officer or employé and appoint his successor at his discretion, without regard to such last-named act, amendments thereto, or rules and regulations made in pursuance of

the same. Whether such act wholly put the marshal's office without the operation of such law, amendments, rules, and regulations, and vested in the defendant the power to make appointments and revoke them at his discretion, when and as he chooses, is the vital question for decision. The act under which the marshal justifies purports thus to relieve him in the matter of appointments and revocations. If the act of 1912 is but an amendment to the original act of 1883, the defendant's position is correct; if, however, the act of 1913 does not exempt the defendant from the procedure specified in the act of 1912 touching removals, the relator ought to prevail.

[9] The act of 1912 is not a supplemental act in that it is not an independent law (State v. Hubbard, 148 Ala. 391, 394, 41 South. 903), and does not so operate as not to alter or modify the original act. 26 Am. & Eng. Ency. Law, 708; United States v. Stocking (D. C.) 87 Fed. 857, 858; McCleary v. Babcock, 169 Ind. 228, 233, 82 N. E. 453. Prior to August 24, 1912, the only statutory provision regulating the removal of a person in the classified civil service list was found in section 13 of the act of 1883 (Comp. St. 1916, § 10290), which declares that no such officer or employé of the United States as is mentioned therein shall be discharged, promoted, degraded, or changed as to official rank or compensation, or shall be given a promise or subjected to a threat in any of such respects, for giving, withholding, or neglecting to make any contribution of money or valuable thing for any political purpose. See, also, Taylor v. Taft, 24 App. D. C. 95. Indeed, it would seem from the debates in Congress mentioned in Flemming v. Stahl (D. C.) 83 Fed. 940, that it was not intended that the act of 1883 should interfere with the right of removal, except to deny it to the extent above mentioned. The purpose of the act of 1912 was to change the existing law by restricting the discretionary power of superior officers in the matter of removals. It was designed to give greater security to those occupying subordinate positions, and thereby to improve the public service, by requiring that removals shall be for cause and after a hearing. An amendment to an act, in the absence of a constitutional prohibition, may be effected by a mere addition thereto (State v. Hubbard, 148 Ala. at page 395; Henderson v. Galveston, 102 Tex. 163, 169, 114 S. W. 108), or by adding other provisions (26 Am. & Eng. Ency. Law, 706; 36 Cyc. 1054). A law is amended when it is, in whole or in part, permitted to remain, and something is added to or taken from it, or it is in some way changed or altered to make it more complete or perfect, or to fit it the better to accomplish the object or purpose for which it was made, or some other object or purpose. Falconer v. Robinson, 46 Ala. 340, 348. The act of 1912 is amendatory of the previous civil service law, adding thereto an additional section to remove a fault and better the then existing law.

[10, 11] It was competent for Congress to exempt the marshal's office from the provisions of all laws relating to civil service and to subject the deputies to the terms of the exempting enactment. People v. Keller, 158 N. Y. 187, 52 N. E. 1107. The act of 1912 is general; that of 1913 is specific. It is not ambiguous. By express terms

it relieves the marshal from the method of removal prescribed by the preceding act and is controlling. This view finds support in the settled rule of statutory construction that general legislation must give way to special legislation on the same subject, whether the provisions are found in the same statute or in different statutes; and generally the provisions must be interpreted so as to embrace only cases to which the special provisions are not applicable. Magone v. King, 51 Fed. 525, 526, 2 C. C. A. 363 (C. C. A. 2), Peck v. Jenness, 7 How. 612, 622, 12 L. Ed. 841, Kepner v. United States, 195 U. S. 100, 125, 24 Sup. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655, People v. Mayor, 82 N. Y. 491, and Lawrence v. City of Cincinnati, 3 Am. Law Rec. 597, 602, are pertinent. The relator's term of service having expired with that of the defendant's predecessor, he saw fit to accept an appointment to a position, subject, it is true, to the law as it then existed, but chargeable with knowledge that Congress, which enacted that law and created the position which he accepted, might further legislate on the same subject-matter and the position so accepted by him. It did in fact modify such existing law, and the relator cannot be heard to complain that the marshal exercised the added power conferred on him by the later enactment. The act of October, 1913, does not say that it shall be inapplicable to those holding under a prior appointment. The wisdom, but not the validity, of an act is assailed. As to its wisdom, the court may not question.

Buckingham v. Steubenville & Ind. R. Co., 10 Ohio St. 25, on which the relator relies, has been examined, but it is not thought to be helpful. An analogous case, however, is that of People v. Whitlock, 92 N. Y. 191, from which it appears that an act of the Legislature passed in 1869 provided that police commissioners might be removed for cause. An amendment of 1881 omitted this provision and gave the mayor the power to remove any commissioner for cause sufficient to himself. Like the act of 1913, it substituted one tribunal for another, and a new mode of procedure for that which had prevailed. The court, speaking for the removed commissioner, said (92 N. Y., at page 198):

"He can no more complain that he is proceeded against by the altered mode than a suitor in our courts can claim to maintain or resist a cause of action by the procedure in force when it accrued. * * * The office was created by the Legislature, and they might abridge its term by express words, or specify an event upon the happening of which it should end. * * * In this case the event specified by the Legislature is removal by the mayor."

On the question of notice and a hearing before final action by the mayor, it was held that the entire matter was within the control of the Legislature, and, as it gave the power to appoint, it could also give the power to remove; and in the absence of provisions that removal should be only for cause and upon notice, it was enough, if the mayor thought there was sufficient cause for removal, even if no opportunity was given to be heard. Cause, it was said, might or might not exist except in his imagination, but his conclusion was final.

[12, 13] The teachings of Re Hennen and People v. Lathrop are, as we have seen, that the subordinate who holds at the discretion of a superior appointing power is subject to removal at pleasure. Under such circumstances the power of removal is absolute, it being vest-

ed in the unlimited discretion of the removing officer, to be exercised at such time and for such reasons as he may deem proper and sufficient. As the relator held at the pleasure of the defendant, and as the defendant exercised the power of removal at his discretion, the relator could be removed without notice or a hearing. Mechem, Public Officers, §§ 448, 454. Considering the state of the law and the facts, a writ of mandamus will not issue to control such discretion. Mechem, § 945; Dillon, Munic. Corp. (4th Ed.) § 250; People v. Drake, 43 App. Div. 325, 60 N. Y. Supp. 309, 312. People v. Mayor, 82 N. Y. 493, 494, thus states the rule:

"It would seem, however, to be quite clear that, whenever a statute in express terms gives a discretionary power to any person, to be exercised by him upon his own pleasure, he is thus made the sole and exclusive judge as to the propriety of its exercise, and in such a case his will or private opinion must stand in place of any reason. Such a power is not to be construed as a judicial discretion, to be regulated according to the known rules of law. * * * It may be arbitrary and fanciful, but such was the condition of the relator's official tenure. He took office at the pleasure of the mayor, and his pleasure, by whatever reason influenced, is the measure of its term."

That the defendant, in exercising his power to remove, did not act in a judicial capacity, see State v. Hawkins, 44 Ohio St. 115, 5 N. E. 228; State v. Sullivan, 58 Ohio St. 504, 514, 51 N. E. 48, 65 Am. St. Rep. 781; State v. Board of Police Com'rs of Cincinnati, 7 Ohio Dec. 326.

Writ of mandamus denied. Petition dismissed.