# State ex rel Gamble v. Hubbard.

*Quo Warranto to Inquire as to the Right of Hubbard to Hold the Office of Recorder.*

(Decided July 6th, 1906. 41 So. Rep. 903.)

*Statutes; Amending Charters; Local and Special Laws.*—The charter of the town of T. confers jurisdiction upon the Mayor to try all cases for a violation of its ordinances. The Act of March 4, 1901, (Acts 1900-01, p. 2323) established a Recorder's court for said town and conferred exclusive jurisdiction upon the Recorder to try all violations of its ordinances. Held, latter act repealed by implication that part of the charter of the town of T. conferring jurisdiction upon its mayor to try violations of its ordinances, and that the Act of October 6th, 1903 (Local Acts 1903, p. 512) repealing the Act of March 4, 1901, was not an amendment of the charter of the town of T. within § 104, Subd. 18, Constitution of 1901, and therefore not unconstitutional. (HARALSON and DENSON, JJ., dissent.)

APPEAL from Pike Circuit Court.
Heard before HON. H. A. PEARCE.

This was a petition, on the relation of John Gamble, addressed to the judge of the Twelfth judicial circuit, asking for an order to G. J. Hubbard to show by what right or authority he was holding the office and exercising the rights and powers of recorder in the town of Troy. The case made by the petition is that under Acts 1869-70, p. 123, a charter was established for the city of Troy and among other powers granted therein the right to have and exercise the powers and jurisdiction of a justice of the peace within the corporate limits of the said city was conferred upon the mayor. By said act he was given exclusive original jurisdiction to hear and determine all suits, prosecutions, or other proceedings for a violation of the charter, ordinances, or by-laws of said city. On March 1, 1901, there was a local act passed by the Legislature of Alabama creating a court of criminal and quasi criminal jurisdiction, to be located at Troy, which court had and was given exclusive jurisdiction of all violations of the by-laws and ordinances of the city of Troy, together with concurrent jurisdiction with the state court to hear and determine certain misdemeanors committed within the police jurisdiction of said city. Said act also provided for a judge of said court to be elected in December, 1903, and each two years thereafter, by the qualified electors of said city, and, in case of a vacancy by removal, resignation, or death, said vacancy was to be filled by an election by the mayor and councilmen of the city of Troy. Such judge was known as the "recorder." On the 6th day of October, 1903, the Legislature passed an act undertaking to repeal the act of March 4, 1901, abolishing the recorder's court and the office of recorder, which act was to take effect in December, 1905.—Loc. Acts 1903, p. 512. At the general election held for city officers in December, 1905, there was no provision made whereby the electors of said city should vote for a recorder, and no votes were polled for a recorder, and none was elected. The two years having expired since the election of the recorder, and the said office being vacant by virtue of no election having been held for that office in the general election for city officers of Troy, the mayor and councilmen of Troy, assuming that the act of October 6, 1903, was void as in

violation of the Constitution, proceeded to elect a recorder, and elected G. J. Hubbard, who is alleged to be now holding said office and exercising its powers and jurisdiction. Hubbard appeared and answered, admitting the facts above stated and alleging the unconstitutionality of the act of October, 1903, as violative of section 104, subd. 18, of the Constitution of 1901. The court decreed said act unconstitutional, and held that Hubbard was rightfully exercising the powers and jurisdiction of the recorder of Troy under his election by the city council. From this decree this appeal is prosecuted.

FOSTER, SAMFORD & CARROLL, for appellant.—No brief came to the reporter.

G. J. HUBBARD, and W. E. GRIFFIN, for appellee.—No brief came to the reporter.

TYSON, J.—Under the act "to establish a charter for the city of Troy in Pike county" (Acts 1869-70, p. 123), all the powers and jurisdiction of a justice of the peace in civil and criminal cases, within the corporate limits, were conferred on the mayor; and "exclusive original jurisdiction to hear, adjudge and determine all suits, prosecutions or other proceedings for the violation of the charter, by-laws or ' ordinances ' of the corporation. Jurisdiction was also conferred upon him of "all proceedings by motion, scire facias, or other suits on any penal bonds payable to the mayor, taken under the act or ordinances of said corporation, including proceedings and suits of the officers of the corporation and the sureties on their official bond, for the nonpayment of taxes or other moneys collected or received, or for other delinquencies or defaults in office."—Acts 1869-70, p. 127, § 12. By the act establishing an inferior court of criminal and quasi criminal jurisdiction, to be known as the "recorder's court," and providing a judge therefor, approved March 4, 1901, exclusive jurisdiction is conferred upon that court "of all offenses against the by-laws and ordinances passed and ordained by the mayor and councilmen of Troy, within the territory embraced within the police jurisdiction of said city, and of all misdemeanors,

concurrently with the criminal couit of Pike county, committed within said territory embraced within said police jurisdiction, except violations of the revenue laws of the state, adultery, concealed weapons, assault and battery when a stick or other weapon is used and larceny and kindred offenses when the value of the property exceeds ten dollars;" also to examine all persons charged with felonies and to commit the same to jail, admit them to bail or discharge them as the law and evidence in the case may require. The other provisions of the act, comprising 16 sections, simply provide the machinery for carrying out and effectuating the exercise of the powers or jurisdiction conferred upon the court, not necessary to be here set out.—Acts 1900-01, p. 2323.

It will be observed that no reference whatever is made in. this act to the charter act. It does not assume in terms to revise, alter, or amend that act, or any section of it. The act itself is complete, and its meaning and scope plain and apparent. While its effect was to alter or change to a certain extent an existing power conferred on the mayor, that effect was produced by the later act, repealing pro tanto, by implication, the section of the charter act which conferred it, and not by anything on its face evincing that it was of an amendatory character. In other words, it is an independent act of legislation, and repeals by necessary implication because inconsistent with that provision of the chaiter act conferring jurisdiction on the mayor. To this extent, and only to this extent, did it change or alter that act. A repeal is one thing, and an amendment is quite another and different thing. A repeal of a statute involves necessarily a change in the law; and this is true, whether it be the only statutory enactment on the subject dealt with in the repealed act. Would any one contend that a statute in derogation of the common law was an amendment of it, simply because it altered or changed it? We think not. If not, it cannot be asserted with any show of logic that because an independent act, full and complete within itself, repeals by implication any portion of a statutory system, it is amendatory of the remaining statutes of that system, to which no reference

is made. It is undoubtedly true that such an act alters or changes the system; but this change or alteration is and must be ascribed to the repeal wrought by the independent act, and not to the change or alteration consequent upon the repeal. So, also, an amendment involves some change or alteration in the existing statute law, and may also operate as a repeal of some of its provisions; but such change or alteration made by the amendment is direct and not consequential, as is the case of a repeal, and therefore the difference between the two is plain. There is also another marked difference. An amendment may not, and often does not, operate as a repeal, but merely as an addition to the statute of which it is amendatory. This can never be the effect or operation of a repealing statute, whether the repeal be by implication or be direct. A repeal is properly defined to be "the abrogation or destruction of a law by a legislative act." Amendment in legislation is "an alteration or change of something proposed in a bill or established as law.—Bouv. Dictionary.

The jurisdiction to try offenses against ordinances of the municipality, civil cases, and offenders violating the criminal laws of the state, conferred upon some municipal officer, is not necessary to the act of incorporation. An independent act, conferring jurisdiction of offenses against city ordinances and of offenses against the criminal laws of the state upon any other judicial tribunal, would not offend the Constitution or charter act creating and conferring corporate powers upon the municipality; and where such a tribunal was established, as here, by an independent act, the corporate powers granted the municipality were neither enlarged nor diminished by it. It is true the jurisdiction of the mayor of the municipality was diminished because his right to try certain offenses was taken away; but we apprehend this did not affect the corporate powers of the municipality. His right to exclusive jurisdiction as a court was not derived from the corporation, nor as mayor was he virtute offici possessed with such a right. This being true, the repeal effected by the act creating the inferior court, known as the "recorder's court," in no proper sense amended the charter of the corporation. That act

was not and did not become in part the charter power of the municipality. To repeat, it simply repealed by implication certain powers conferred upon an officer of the municipality—the mayor.

These views are in full accord with, and are supported and sustained by, all the decisions of this court except the case of *Little v. Huey*, 137 Ala. 659, 35 South. 134, from which the writer dissented. In *Ex parte Pollard*, 40 Ala. 77, the question was presented whether an independent act, which repealed by implication certain other statutes, was an amendment of those statutes within the meaning of the constitutional prohibition that "no law or any section of any law, shall be revised or amended by reference to its title and number; but the law or statute revised or amended shall be set forth at full length." The court held that it was not. It was then said: "The law is not void because it amends or revises other laws. It only repeals laws contravening its provisions. Its effect is analogous to repeal by implication. It was never intended by the Constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. * * * The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character." In *City Council of Montgomery v. Birdsong*, 126 Ala. 647, 28 South. 522, it was said: "Nor does the enactment offend that other provision of said section of the state Constitution, touching the revision, amendment, and extension of laws. That provision has been repeatedly held to apply to statutes strictly amendatory, and not to such as are independent and complete within themselves, although they adopt by reference merely the provisions of other statutes on the same subject, there appearing in more enlarged and extended form." See, also, *Sisk v. Cargile*, 138 Ala. 164, 35 South. 114; *Thomas v. State*, 124 Ala. 54, 27 South. 315; *Cobb v. Vary*, 120 Ala. 263, 24 South. 442; *Bates v. State*, 118 Ala. 102, 24 South. 448; *B. U. Ry. Co. v. Elyton Land Co.*, 114 Ala. 70, 21 South. 31b; *Ex parte Thomas*, 113 Ala. 1, 6, 21 South. 369; *State ex rel. v. Rogers*, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *Gandy v. State*, 86

[State, ex rel. Gamble v. Hubbard.]

Ala. 20, 5 South. 420; *Falconer v. Robinson,* 46 Ala.
340, 348; *Locckhart v. City of Troy,* 48 Ala. 579. In the
last case cited (*Lockhart v. City of Troy*) it was held
that a supplemental act was not an amendment within
the constitutional prohibition. It is then said: "A sup-
plemental act merely adds something that was left out
of the original act. It does not necessarily revise it or
amend it in the more technical sense. An amendment
is what may be incorporated into the original on its pas-
sage. A supplemental act is an independent law, and
a healing act is one that cures some defect in a proceed-
ing which the Legislature could have authorized in the
first instance." Other quotations might be indulged to
the same effect, but these will suffice to show that this
court is unqualifiedly committed to the proposition that
an independent legislative act, complete within itself,
inconsistent with other statutory provisions on the same
subject, is not an amendment, but a repeal. This being
the settled interpretation of the constitutional provis-
ion, the incorporation of the same language in the pres-
ent Constitution must be regarded as an adoption of that
interpretation.—*Alford v. Hicks,* 142 Ala. 355, 38 South.
752; *White v. State,* 134 Ala. 197, 32 South. 320.

It is also a well-settled rule of construction that a
word or phrase repeated in a statute or Constitution
will bear the same meaning throughout the statute or
Constitution unless a different intention appears.—2
Lewis' Sutherland, Stat. Cons. § 399. Has the word
"amending," used in subdivision 18 of section 104 of the
present Constitution, a different signification from the
word "amended," as used in section 45 of the same in-
strument, and, indeed, in the same article of the same
instrument? The language of the latter section is: "No
law shall be revised, amended or the provision thereof
extended or conferred by reference to the title only." The
language of the former is: "The Legislature shall not
pass a spcial, private or local law in any of the follow-
ing cases: * * * Amending, conferring or extending the
charter of any private or municipal corporation," etc.
Both are prohibitions against legislative action with res-
pect of laws which could be exercised if they did not ob-
tain. There, is clearly nothing in the language of the

latter to indicate that the framers of the Constitution intended that the word "amending" should be interpreted differently from the word "amended" in the former. This being true, must it not be presumed that it was advisedly and intentionally used with reference to the well-settled construction which this court had placed upon the same word in section 45? We think the answer must necessarily be in the affirmative. Any other conclusion would violate every well-known rule of statutory construction and impute to the Constitution makers a want of knowledge of the decisions of this court, and of all the courts of other jurisdictions where a similar constitutional provision obtains.

Having shown that the recorder's court act was not an amendment of the charter act, within the meaning of the constitutional prohibition against amending municipal charters by local laws, it necessarily follows that the act repealing the recorder's court act, approved October 6th, 1903 (Loc. Acts 1903, p. 512), after the adoption of the present Constitution, is not offensive to that provision. It is true this act is a local one, but no objection is taken to its constitutionality upon any other ground than that it is violative of subsection 18 of section 104. And this contention of necessity proceeds upon the theory that it repeals an amendatory act—the recorder's court act—of the charter of the city of Troy, and in that way amends the charter, by taking from it that which the recorder's court act added to it. The case of *Little v. State ex rel. Huey, supra,* is directly opposed to the principles we have declared, and must be overruled.

The judgment appealed from will be reversed, and one will be here rendered excluding the respondent from the illegal exercise of the functions and powers formerly conferred by the recorder's court act.

Reversed and rendered.

WEAKLEY, C. J., and DOWDELL, SIMPSON, and ANDERSON, JJ., concur.

DENSON, J. (Dissenting.)—The mayor and councilmen of Troy is a municipal corporation, by virtue of an

act of the General Assembly of Alabama which was approved on the 17th day of February, 1870.. By the twelfth section of the act of incorporation (Acts 1869-70, p. 127) jurisdiction was conferred on the mayor to hear and determine all suits, prosecutions, or other proceedings for the violation of the charter, by-laws, or ordinances of the corporation. At the session of 1900-01 of the General Assembly an act was passed, which is entitled "An act to establish an inferior court of criminal and quasi criminal jurisdiction in the city of Troy, to be known as the 'recorder's court,' to define its powers, and to provide a judge therefor." This act was approved by the Governor, March 4, 1901.—Acts 1900-01, p. 2323. By the first section of the act the court as designated in the title was established, with exclusive jurisdiction of all offenses against the by-laws and ordinances passed and ordained by the mayor and councilmen of Troy, within the police jurisdiction of said city, and of all misdemeanors, concurrently with the criminal court of Pike county, committed within the police jurisdiction of the corporation except certain misdemeanors named in said section. The second section (page 2324) of the act provided for a judge of said court, who should be known as the "recorder." It also provided for the election of the recorder by the mayor and councilmen of Troy immediately after the passage of the act, and provided that he should hold office until the time for the regular election of the city officers on the second Tuesday in December, 1903. It further provided that on the second Tuesday in December, 1903, and every two years thereafter, a recorder should be electd by the qualified voters of the city of Troy, who should hold his office for a term of two years, and until his successor should be elected and qualified. It is further provided by section 2 that the recorder shall receive a salary of $600 a year to be paid out of the treasury of the mayor and councilmen of the town of Troy. It is also provided by section 2 that if the office of recorder shall at any time become vacant by death, removal, or resignation, the mayor and councilmen of Troy shall elect a competent and suitable person to fill the vacancy, etc. Section 3 (page 2325) of the act requires the recorder to keep an office in Troy in

such place as the mayor and councilmen shall provide, furnish, and direct. Section 4 of the act provides that the recorder shall give bond in the sum of $2,000, payable to the mayor and councilmen of Troy, etc. Section 11 (page 2328) of the act provides that the marshal and police officers of the city of Troy shall be officers of the recorder's court. Section 17 (page 2330) of the act provides that all laws and parts of laws in conflict with the provisions of the act are repealed.

Under the Constitution of 1875 "the Legislature had plenary power to alter, amend, withdraw, or repeal at pleasure, either by a general law, operating upon the whole state, or by special statute, the charter, or any particular authority conferred on a municipal corporation."—*City Council of Montgomery v. Shoemaker*, 51 Ala. 114; *Little v. State*, 137 Ala. 659, 35 South. 134. Did the act of March 4, 1901, have the effect to amend, alter, change, or extend the charter of the municipal corporation, mayor and councilmen of Troy? It would seem that there could not have been a more effectual amendment of the charter if the act of 1901 had expressly repealed that part of section 12 of the original act which conferred on the mayor jurisdiction to hear, adjudge, and determine prosecutions for violations of the by-laws and ordinances of the city. There can be no reconciliation of the two acts with respect of the jurisdiction of the mayor and that of the recorder's court. By the original act the jurisdiction is conferred on the mayor. By the act of 1901 the recorder's court is created, and the exclusive jurisdiction is conferred on it of all offenses against the by-laws and ordinances of the city, and the presiding judge of said court—the recorder —is an official of the city, and a distinct individual from the mayor. So there can be no question that it was intended by the enactment of the act of March 4, 1901, to take away from the mayor the jurisdiction to hear and determine prosecutions for violations of the by-laws and ordinances of the corporation and establish a court with such jurisdiction to be presided over by a recorder. And we think there can be no doubt that the act is in effect an amendment of the charter of the corporation.—*Little v. State*, 137 Ala. 659, 35 South. 134; *State v. Rogers*,

107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *Cobb v. Vary*, 120 Ala. 263, 24 South. 442; *City Council of Montgomery v. Birdsong*, 126 Ala. 632, 28 South. 522.

The Legislature at the session of 1903 passed an act repealing the act of March 4, 1901, above referred to. The repealing act was approved October 6, 1903.—Loc. Acts 1903, p. 512. It is insisted that the repealing act was enacted in violation of section 104 of the Constitution, which provides that "the Legislature shall not pass a special, private or local law in any of the following (31) cases," the eighteenth of which is, "Amending, confirming or extending the charter of any private municipal corporation," etc. That the act of October 6, 1903, is a local act within the definition given of a local act in section 110 of the Constitution, seems too plain for argumentation. Having reached the conclusion that the act of March 4, 1901, is an amendment of the charter of the municipal corporation, then, if the act of October 6, 1903—the repealing act—is to operate as an amendment of the charter of the corporation, it seems that the insistence that it was not constitutionally enacted should prevail. While the word "amend," in legal phraseology, does not generally mean the same thing as "repeal," "it does not follow that amendments of a statute may not often be accomplished by repeals of some of its parts, and in this way to better the condition, and change from bad to better." As the act of March 4, 1901, operated as an amendment of the charter of the corporation, and thereby became a part of the charter, I think it is consistent with reason and entirely logical to say that an act repealing the act of 1901 would operate as an amendment of the charter of the corporation. This view, it is conceded in the majority opinion, finds support in the case of *Little v. State, supra.* But by the majority opinion that case is overruled. I think the case asserts sound doctrine and should stand as authority.

My conclusion is that the effect of the act of October 6, 1903, in repealing the act of March 4, 1901, would be to amend the charter of the corporation, and, consequently, that it was not constitutionally enacted.—Section 104 of the Constitution. Therefore I dissent from

the views expressed and the conclusions reached by my Brethren.

HARALSON, J., concurs in the foregoing opinion of DENSON, J.