(77 South. 24)

## KUYKENDALL v. EDMONDSON.
## (8 Div. 38.)

(Supreme Court of Alabama.   Nov. 15, 1917.)

**1. DEATH ☚60—EVIDENCE—ADMISSIBILITY.**

In damage action for homicide, evidence that witness noticed places resembling sores on the mule driven by deceased *held* admissible to show the direction and range of bullets from defendant's gun, etc.

**2. EVIDENCE ☚528(2)—ADMISSIBILITY—ACTION FOR HOMICIDE.**

In damage action for homicide, where defendant pleaded self-defense, testimony of physicians after examining the body that certain wounds caused paralysis and instant death is admissible.

**3. APPEAL AND ERROR ☚1058(1)—HARMLESS ERROR—EXCLUDING TESTIMONY.**

Excluding evidence in a damage homicide case is not prejudicial error, where the court later changed its ruling, and the fact involved was shown without dispute.

**4. DEATH ☚61—EVIDENCE—ADMISSIBILITY—ACTION FOR HOMICIDE.**

In a damage homicide action, testimony of previous difficulties is admissible only as tending to disclose the state of minds of the parties when the fatal difficulty arose.

**5. DEATH ☚61—EVIDENCE—ADMISSIBILITY.**

In a homicide damage action, evidence that deceased had previously injured defendant's eye cannot be supported by expert testimony that a blow of the kind described would have resulted in such injury without offending the rule against inquiring into the details of previous difficulties.

**6. DEATH ☚60—EVIDENCE—ADMISSIBILITY.**

In damage action for homicide, evidence describing the physical surroundings, etc., *held* admissible, where defendant pleaded self-defense.

**7. DEATH ☚60—EVIDENCE—ADMISSIBILITY.**

Excluding testimony of deceased's conduct and declarations tending to show hostility toward defendant was erroneous.

**8. DEATH ☚60—EVIDENCE—ADMISSIBILITY.**

Where defendant pleaded self-defense, plaintiff may show that deceased sought a reconciliation with defendant.

**9. EVIDENCE ☚271(6)—ADMISSIBILITY—ACTION FOR HOMICIDE.**

Defendant's self-serving declarations of his desire to avoid difficulty with deceased are inadmissible, although testimony regarding deceased's efforts to obtain a reconciliation were admitted.

**10. DEATH ☚60—EVIDENCE—ADMISSIBILITY.**

Testimony regarding hostile statements made by deceased were properly excluded, where their reference to defendant was not shown.

**11. APPEAL AND ERROR ☚1060(1) — ARGUMENT OF COUNSEL—HOMICIDE DAMAGE ACTION.**

Where defendant pleaded self-defense, the argument of plaintiff's counsel that, if defendant had gone into his house and put up his gun, no one would have been hurt, does not constitute reversible error.

**12. DEATH ☚103(1)—JURY QUESTION—SELF-DEFENSE.**

Evidence that defendant, while standing on his porch, shot deceased, who was unarmed and driving past on the road, etc., *held* to make question whether defendant acted upon a previously formed unlawful design without a hostile demonstration by deceased one for the jury.

**13. TRIAL ☚244(3)—HOMICIDE—REQUESTED INSTRUCTIONS.**

Requested instructions that defendant being armed and his movements previous to the shooting did not mitigate against his self-de-

fense plea *held* to invade the jury's province or give undue prominence to particular facts.

**14. DEATH ☚104(2) — INSTRUCTIONS—SELF-DEFENSE.**

An instruction that defendant was not justified in shooting unless· deceased drew or handled his pistol so as to create a belief of danger, etc., *held* erroneous, since defendant might act upon reasonable appearances without awaiting the actual drawing of the weapon.

**15. DEATH ☚103(3) — HOMICIDE—SELF-DEFENSE.**

Defendant may act in self-defense upon reasonable appearances, and is not required, as a matter of law to await deceased's actual .drawing of a weapon.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Action by Mary M. Edmondson against C. Kuykendall.   Judgment for plaintiff, and defendant appeals.   Reversed and remanded.

The facts sufficiently appear.   The following charges were refused to the defendant:

(4) The fact that the defendant did not retreat was not a fighting willfully, wantonly, and intentionally.

(5) The fact, if it be a fact, that the defendant did not retreat from the edge of the porch behind the corner of the room, cannot be looked to as a circumstance tending to contradict the defendant's evidence that he shot in self-defense.

(9) The fact, if it be fact, that the defendant could have retreated into his dwelling, and thereby have escaped any danger, if any he was in, and that he did not do so or attempt to do so, cannot be looked to as evidence tending to prove that the defendant fought willingly.

(33) In a case of this kind the plaintiff must offer proof that reasonably satisfies the jury that the defendant was at fault in bringing on the difficulty of the occasion of the killing, and if no more proof on this point is offered than the fact that defendant came around the front yard with his gun and started into his house on a peaceful mission, this would not, without more, constitute fault on his part in bringing on the difficulty.

(37) If it is true that the defendant could have retreated from his front porch to a place of safety, and did not do so, you cannot look to his failure to do so as evidence tending to show that his conduct in shooting the defendant [deceased meant] was willful, wanton, and intentional.

(34) It·was not wrongful for the defendant to go through his front yard with his gun, even though he may have known that Edmondson had gone to Albertville, and if, after considering all the evidence in this case, you are reasonably satisfied that the defendant did no more than that, and if on discovering defendant with his gun the deceased assaulted him with a pistol, the defendant had the right to use his gun in defending himself from such assault, and if from a careful consideration of all the evidence you are reasonably satisfied that the defendant did no more than this, your verdict should be for the defendant.

(43) If you are reasonably satisfied that at the time the fatal shot was fired the circumstances then surrounding the defendant and then known to him were such as to generate in the, mind of a reasonably cautious man, and did in fact generate in the mind of the defendant the honest belief that it was necessary for him to shoot in order to save his own life, or to save himself from serious bodily harm, then, if the plaintiff has failed to prove to your reasonable satisfaction by the evidence in this case that Kuykendall was at fault in bringing

on the difficulty on the occasion of the killing, then your verdict should be for the defendant, and in determining whether or not the defendant was at fault in bringing on the difficulty, you cannot look to the fact, if it be a fact, that the defendant did not retreat into his dwelling from his front porch with his gun.

Street & Bradford and John A. Lusk & Son, all of Guntersville, for appellant. McCord & Orr, of Albertville, for appellee.

McCLELLAN, J. On July 20, 1915, Kuykendall killed plaintiff's (appellee's) intestate, Edmondson, by shooting him with a shotgun. The action is for damages under the homicide statute (Code, § 2486). The defendant (appellant) sought to justify himself by recourse to the doctrine of self-defense. These men had entertained for each other a strong hostility during a long period next preceding the tragedy. Their difference arose over a dispute with reference to a line dividing their farms. They had either fought or threatened to fight on several occasions; and direful threats, each toward the other, are attributed to each of them. When the defendant shot Edmondson, Edmondson was in the public road in his buggy drawn by a mule, and defendant was on his front porch, from which point he fired two shots at Edmondson. Plaintiff's theory was that defendant, being aware that Edmondson had previously during the morning passed up the public road and would likely later return to his home, awaited his anticipated presence in the public road, and was prepared and intended to shoot Edmondson when Edmondson came within shotgun range from the defendant's nearby porch, which design, the plaintiff contended, defendant carried out; Edmondson not firing any shot or making any effort to draw his weapon or to fire a shot. On the other hand, defendant's insistence was that he (defendant) had, just previous to the shooting, gone to the woods on his place for the purpose of killing a squirrel; that with gun in hand he came around a corner of his dwelling, with a view to entering the house by the way fronting the public road, almost at the same time Edmondson arrived at a point in the road nearly opposite defendant's front steps; that defendant, without then seeing Edmondson, walked up his front steps, with his gun on his shoulder, to the next step to the top, and was brushing dirt off his shoes, when he saw Edmondson stop his mule and give unmistakable signs of a purpose and an effort to draw a pistol from the waistband of his trousers; that defendant then made a step or two to the floor of the porch, and thence to a point nearly behind a pillar of the porch, wherefrom he at once fired the first shot at Edmondson, who, the defendant asserts, had by that time fully drawn his pistol; that the mule, frightened by the shot from defendant's shotgun, started with a jump, and, swerving somewhat from the roadway, proceeded about 25 feet, when defendant shot a second time, having, in the meantime, discharged the empty shell and reloaded the single-barrel gun by the use of the automatic mechanism; that between the time the defendant fired the first and second shots Edmondson had his pistol in his hand, ready for use, and continued to face the defendant; that the mule went on down the road, Edmondson, when last seen by defendant, being in the usual sitting posture of one riding in a buggy; and that defendant did not know until some hours afterwards that he had wounded or killed Edmondson.

It is apparent that all of the issues presented by the complaint and by the special pleas were solvable alone by the jury. Having purposely shot Edmondson with a shotgun, it is manifest that the liability vel non of the defendant depended upon whether the justification asserted by the defendant was found by the jury to have been sustained. The jury awarded the plaintiff damages in the sum of $5,000. The appellant has assigned on the record 77 errors, but has expressly waived, in his brief, 23 of these assignments. All of the errors urged in brief for appellant relate to rulings on the admission or rejection of evidence and to the instruction of the jury in giving three special charges requested by the plaintiff and in refusing a large number requested for the defendant. It is impracticable to separately treat all of the upwards of 50 errors assigned. In the main, the restatement in the opinion of the principles applicable to and governing those having at least colorable bases for the insistence of error must suffice.

[1] There was no error in permitting the witness Robert Edmondson to testify that "he saw some places," like sores, on the mule driven on this occasion by his father. Originally this witness stated that it was three or four days after the tragedy that he noted these bloodless places on the mule; but latterly, in connection with the statements indicated, he testified that "it might have been the next day" that he saw these places. The whole facts and circumstances surrounding and relating to the event were admissible, including the clothing worn by the deceased, the marks and range of bullets from the defendant's gun on the vehicle, the person and clothing of deceased, on the animal being driven by him, if such there were, on the trees, and the presence and location of wads from the gun found in the yard. There were important, earnestly controverted issues to which these circumstances bore an evident relation. Rollings' Case, 160 Ala. 82, 49 South. 329. The direction in which the defendant fired the first and the second shots at Edmondson, the defendant being at the time practically stationary on his veranda, and the vehicle, with Edmondson in it, in motion forward after the first shot, was material to the phase of the inquiry involved in the relative location of the parties when the two shots were fired. It is

not inappropriate to note at this point that, according to the doctrine of the following decisions, the court erred in defendant's favor in excluding the witness Edmondson's statement that the marks on the mule "looked like shot places": Perry's Case, 87 Ala. 30, 6 South. 425; Walker's Case, 153 Ala. 31, 45 South. 640; S. & N. R. R. Co. v. McLendon, 63 Ala. 266, 276; Watkins' Case, 89 Ala. 82, 87, 88, 8 South. 134.

[2] In one aspect of the case the plaintiff's contention was that the first shot gave the fatal wound, causing immediate paralysis. Supporting this theory—serving, if established, to refute the defendant's insistence that Edmondson thereafter menaced defendant with his pistol, and in consequence affording a basis for considerations reflecting upon the credibility of the defendant, who was the sole surviving witness to the tragedy—the plaintiff was permitted, over defendant's objections, to show by the opinion of qualified medical men who examined the body that certain wounds on the head or neck of Edmondson caused instant death, paralysis, and that one so wounded could not thereafter raise or hold a pistol or the reins to control the animal drawing the buggy. It has been often decided here that a qualified, expert witness may give his opinion upon the effect a certain wound had on the body of the victim, even to the extent of justifying the reception of such opinions where the opinion given was that a certain wound produced death. Sims' Case, 139 Ala. 74, 36 South. 138, 101 Am. St. Rep. 17; Burkett's Case, 154 Ala. 19, 45 South. 682; Smith's Case, 165 Ala. 50, 57, 51 South. 610. The principle recognized and applied in those cases was applicable to the subjects of inquiry and of opinions drawn from the experts in this instance. The Elliott Case, 166 Ala. 419, 52 South. 28, Walker Case, 34 Ala. 469, and Councill Case, 172 Ala. 295, 55 South. 314, respectively, decide nothing to the contrary.

[3] No prejudice attended the original declination of the court to permit the proof by one witness of the fact that defendant went to the woods a short time prior to the shooting to kill squirrels. Latterly the court changed its ruling in that respect. This fact was otherwise shown without dispute. That his wife requested him to kill some squirrels for her was also shown without dispute by the showing made for her.

[4] A number of the assignments complain of the action of the court with respect to the "details" of previous difficulties between these men. The fact of a previous difficulty is only admissible as tending to disclose the state of mind of the parties on the occasion under inquiry with a view to enabling the jury to determine who was at fault in the matter or act for which the defendant is being tried. There is no questioning by appellant of the stated rule with reference to the "details" of a previous difficulty between the defendant and the party assaulted or slain; but the insistence is that the matters complained of in these particular assignments disclose that the court improperly held certain acts to be "details" of previous difficulties; whereas they were but evidence of the previous difficulties themselves. The court has reviewed these grounds of complaint, and does not feel justified in pronouncing error of the trial court's action in that regard. It appears that the court was at least liberal to the defendant in the administration of this rule.

[5] The defendant himself testified that the blow previously inflicted upon him by Edmondson with a rock caused, under conditions detailed, his eye to "wink" involuntarily; that one of the threatened altercations between him and Edmondson followed from the derisive, offensive impression Edmondson took from this involuntary action of the defendant's eye. It is quite clear, we think, that to have allowed defendant to go further into the matter than he was permitted to go by the court or to introduce, as he offered to do, an expert to show that a blow of the kind he received could or would or did furnish the cause for the effect indicated, would have offended the rule that inhibits inquiry into the details of a previous difficulty.

[6] There was no possible error in admitting evidence describing every feature of the place where the tragedy occurred, including, of course, the surroundings. Whether defendant's conduct just preceding the shooting was the expression of a design against Edmondson was of the issues before the jury; and what he did, where he went and returned, and the physical relation of the scene to the shooting, and the location of his residence, its corners and entrances, etc., were relevant to the issues in the case. There is nothing in evidence of this character to justify an assumption or an inference that the doctrine applies that one free from fault in provoking a difficulty is not required to retreat when assaulted while he is within or about his dwelling. This doctrine will be later considered in connection with questions made by special requests for the instruction of the jury.

[7-9] The court was in error in denying to the defendant the benefit of the testimony tending to show conduct and declarations on the part of Edmondson which were, at least, susceptible of the interpretation by the jury of his entertainment of hostile purposes and feelings toward defendant. These matters were sought to be shown by the witness Mrs. Enoch Parrish. Like considerations lead to a conclusion of error in the particular that the court excluded similar testimony contained in the "showing" made for Mattie McDaniel. On the other hand, it was manifestly proper to permit the plaintiff to offer evidence tending to show that Edmondson expressed a desire for peace and sought the aid of others to effect an adjustment of the

differences between him and defendant. However, the principle under which such statements by Edmondson were rendered admissible to refute the entertainment by Edmondson of hostile feelings and purposes toward defendant did not render admissible self-serving declarations by the defendant tending to indicate his desire to avoid an altercation with Edmondson.

[10] The testimony of the witness Swords to hostile statements made by Edmondson was properly excluded, since neither those statements nor any evidence explanatory thereof appear to have had any reference to the defendant, or to have been susceptible of an interpretation that could refer them to the defendant. Caddell v. State, 129 Ala. 57, 30 South. 76.

[11] During the argument to the jury one of plaintiff's counsel said:

"If he [meaning defendant] had gone into the house and put up his gun, there would not have been any one hurt there."

The defendant's objection and exception to this argument cannot avail him, unless there can be attributed to the expression the effect to assert that defendant's duty was to retreat, notwithstanding he was at a place, viz., his dwelling, at which he was under no duty to retreat before or from an assailant whom he had not provoked to assault him. That would be a very strained construction to put on the statement of counsel. Normally, reasonably, it must be referred to the evident right of counsel to comment upon the probabilities had a certain course been pursued or a certain action not intervened. The statement did not import a purpose to assert the duty to retreat. Doubtless the speaker's idea was colored, as, indeed, it quite reasonably might have been under the plaintiff's theory of the circumstances of the event, by his view of defendant's hostile design when he so ordered his movements as at least to impress Edmondson that he was about to assail him or was ready to do so.

[12, 13] In the oral charge of the court, and in special written charges given for the defendant, the jury was expressly advised that, since the defendant was on the porch of his dwelling when he shot Edmondson, he was under no duty to retreat, if he was otherwise entitled to justify his act under the doctrine of self-defense. There can be no doubt that the jury was affirmatively, correctly instructed that in no event was the defendant required to retreat even if he was menaced by Edmondson, and that he was without fault in bringing on the difficulty. On the other hand, the jury was also well advised that the fact that defendant was on this occasion on his veranda could not possibly justify him in becoming the aggressor or in otherwise provoking the difficulty. The duty to retreat, as an element of self-defense, presupposes a menace which may be relieved by the retirement of the party menaced. Where the person menaced is within his dwelling or its curtilage, he may stand his ground and kill his assailant if he has done nothing to provoke the assault. These principles the court gave the jury in very clear form. But, to state the defendant's contention as best we may, the defendant desired that the jury be also advised that the facts that defendant came around the corner of the house at the time he did with his shotgun on his shoulder, that he stopped on the steps as he says he did, that he moved thence to the porch and near a pillar just preceding the shooting, and that he did not enter the house rather than remain and shoot Edmondson were all or either of them ineffectual as tending to prove that defendant fought willingly, or that he did anything to deprive him of the justification accorded those who kill in self-defense. The report of the appeal will contain special charges 4, 5, 9, 33, 34, 37, and 43, refused to defendant. While the abstract conceptions in the mind of the draughtsman of these requests for special instructions were well conceived, yet, when referred to the evidence before the jury, each of these requests possesses affirmative faults or reasonably calculated qualities to mislead that justified the court in refusing to pass them to the jury. Under the whole evidence it was open to the jury to conclude, not only that Edmondson made on this occasion no hostile demonstration toward defendant nor menaced him in any way, but that the defendant entertained and acted upon a previously formed unlawful design toward Edmondson. When these special requests are considered in the light of this phase of the evidence, as well as with reference to the fact that the jury was advised that the duty to retreat was not upon defendant, it is manifest that these requests either invaded the province of the jury or sought to give or would give undue prominence, if not emphasis, to particular facts or circumstances disclosed in the evidence. The court had expressly excluded retreat as a factor in the feature of the case introduced by defendant's reliance upon self-defense for his justification. Nevertheless the acts, the movements, of the defendant at the time of and just previous to the shooting were matters due to be considered without qualification through doubtfully framed instructions by the jury for their bearing and influence upon the really major issue, viz. whether defendant contrived a situation that would favor his purpose (if such he entertained) to assail Edmondson as he returned in the road in front of defendant's nearby dwelling. The court did not err in refusing the above-noted special requests for instructions. Such of the remaining special requests for instruction of the jury as were refused to the defendant have been duly considered by the court; and no prejudicial error can be predicated of their refusal. Gen. Acts 1915, p. 815.

[14, 15] Our opinion is that the court erred

in giving to the jury charge 2 requested by the plaintiff, and which reads:

"I charge you, gentlemen of the jury, that the fact, if it be a fact, that the deceased had a pistol at the time he was killed, is not a circumstance which would induce or justify the defendant in shooting the deceased, unless the deceased drew the pistol or in some manner handled the pistol in such a way as to generate in the mind of the defendant an honest belief that the deceased was in the act of shooting the defendant or inflicting on him great bodily harm."

In addition to unduly particularizing and probably emphasizing a part of the evidence, it omitted to take due account of the essential feature of a proper hypothesis in a charge of that character that, in a case where the defendant is free from fault in provoking the difficulty, a defendant has the right to act upon reasonable appearances, and is not, as a matter of law, required to await the actual drawing of the weapon of his assailant or to remain inactive until his assailant's movement discloses to the defendant the actual handling of the weapon.

For the errors indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.