(87 South. 878)

KUYKENDALL v. STATE. (8 Div. 738.)

(Court of Appeals of Alabama. June 28, 1920.
Rehearing Denied Nov. 9, 1920.)

**1. CRIMINAL LAW ☞539(1)—TESTIMONY OFFERED BY WITNESS ON FORMER TRIAL FOR ONE PURPOSE COMPETENT FOR ANOTHER PURPOSE.**

The fact that on a former trial testimony of a witness, since deceased, was offered for the purpose of contradicting the defendant does not, for that reason, make it incompetent in the present trial for the purpose of showing a threat or ill will on the part of the defendant, without laying a predicate for the introduction of contradictory statements.

**2. HOMICIDE ☞157(3)—PARTICULARS OF PREVIOUS DIFFICULTIES NOT ADMISSIBLE.**

While evidence of previous difficulties may be admissible in a homicide case it is not permissible to prove the particulars thereof; and, where defendant testified that on one occasion he and deceased were drunk together, and deceased beat him up terribly, the court did not err in sustaining an objection to defendant's offer to prove by himself that this was six years before the tragedy, and that while deceased and defendant were driving along the road in a buggy, deceased knocked defendant out of the buggy and drove over him back and forth.

**3. HOMICIDE ☞260—CHARGE AS TO DUTY OF JURY IN MAKING VIEW HELD CORRECT.**

In a homicide case, where the jury was permitted to view and inspect the buggy in which deceased was riding at the time of the killing, the court's charge that it was not proper for the jurors to discuss or call one another's attention to the shot they saw, or to talk about it while doing the viewing, that they could put their hands on it if they wanted to, but that the buggy was offered, not for the purpose of original testimony, but to illustrate the testimony already had, correctly stated the law.

**4. CRIMINAL LAW ☞829(1)—NOT ERROR TO REFUSE CHARGES TO JURORS BEFORE VIEWING BUGGY IN WHICH DECEASED WAS KILLED, IN VIEW OF CHARGE GIVEN.**

In a homicide case, the court did not err in refusing to give requested charges concerning the duty of jurors while viewing buggy in which deceased was killed, where such charges were covered by the 'statement of the court to the jury as to how they were to view the buggy, especially where it is not shown that the jury did any of the things concerning which the refused charges dealt, or that any injury was done defendant by anything that may have transpired in connection with the view.

**5. HOMICIDE ☞190(1)—THREAT OF DECEASED AGAINST WITNESS INCOMPETENT.**

In a homicide case, the court did not err in refusing to allow a witness to testify that on one occasion deceased, when he met witness in the road, stepped to one side and said to witness, "I will kill you if you drive that buggy over me."

**6. HOMICIDE ☞191—EVIDENCE AS TO SOME ONE HANGING ABOUT DEFENDANT'S HOUSE INCOMPETENT.**

In a homicide case, it was not competent for the defendant to show by his son that a night or two before the killing, as he came into the house, he saw some one lurking around the rear of the house, who ran off as witness approached the house, in the absence of a showing that the person was deceased, or that he was there, if there, for any improper purpose, or that he was there by the aid, knowledge, or consent of deceased, or that deceased had any connection with his being there.

**7. CRIMINAL LAW ☞719(3)—ARGUMENT TO JURY THAT SHOT THROUGH BRAIN WOULD KILL INSTANTLY NOT ERRONEOUS.**

In a homicide case, the court did not err in refusing to exclude argument of counsel, "Gentlemen, you know as a matter of common knowledge that a shot that entered the eye and went through the brain would kill a man instantly."

**8. HOMICIDE ☞233 — NOT NECESSARY TO SHOW MOTIVE.**

It is not indispensable in a homicide case that the state should prove motive for the commission of the crime.

**9. HOMICIDE ☞300(3) — INSTRUCTION CALLING FOR FACTS OF FORMER DIFFICULTIES PROPERLY REFUSED.**

A requested instruction in a homicide case, which called for a determination of the facts of former difficulties, was properly refused, since the fact only that there had been a former difficulty was permissible to go to the jury.

**10. HOMICIDE ☞300(4)—CHARGE PROPERLY REFUSED AS ARGUMENTATIVE.**

A requested charge in a homicide case, "If the evidence shows that on previous occasions E. (deceased) had endeavored to draw the defendant into a combat with him, and defendant showed an unwillingness to do so, you may consider that fact in connection with the balance of the testimony as shedding light on his willingness or unwillingness to enter into combat with E. on the occasion of the killing," was properly refused, as argumentative.

**11. CRIMINAL LAW ☞829(1) — REQUESTED CHARGES COVERED BY GIVEN CHARGES PROPERLY REFUSED.**

It is not error in a criminal case to refuse requested charges practically covered by given charges.

**12. HOMICIDE ☞300(3)—CHARGE ON DEFENDANT'S FAILURE TO RETREAT HELD PROPERLY REFUSED.**

In a homicide case, a requested charge that, "If the defendant was on the front porch for a peaceful purpose, then his failure to retreat into the dwelling when the difficulty arose cannot be looked to as a circumstance tending to prove that the defendant fought willingly," was properly refused.

**13. HOMICIDE ☞300(6) — CHARGE PROPERLY REFUSED AS SINGLING OUT EVIDENCE.**

In a homicide case, an instruction that "the fact that the defendant did not go into his

house, if threatened with an attack, cannot be considered by the jury as a circumstance against him," was properly refused as an undue singling out of a part of the testimony, tending to pretermit certain duties required of the defendant under his plea of self-defense.

**14. HOMICIDE ⊕⟿300(4, 5)—CHARGE PROPERLY REFUSED AS ARGUMENTATIVE AND MISLEADING.**

In a homicide case, a charge, "If the defendant was free from fault in provoking or bringing on the difficulty in question, he was under no duty to retreat no matter how much he may have been in the wrong in any other difficulty between him and deceased, and there was not and could not be any evidence offered to show you that he was at fault in any other difficulty," was properly refused, as argumentative and misleading.

**15. HOMICIDE ⊕⟿300(5) — CHARGE PROPERLY REFUSED AS MISLEADING AND CONFUSING.**

In a homicide case, the court properly refused as misleading a charge: "A person without fault in bringing on a difficulty, and threatened with an attack, with a deadly weapon, which reasonably creates in the mind of the defendant as a reasonably cautious man a reasonable and honest belief that he is in danger of sustaining the loss of his life, or of sustaining grievous bodily harm, is not required to wait until the attack is actually made, but may act upon such reasonable appearances, and himself make the first attack and kill his adversary, if it reasonably appears necessary to do so for protection to himself, and may continue to attack until he knows that he is freed from such danger."

**16. CRIMINAL LAW ⊕⟿763, 764(8)—REQUESTED CHARGE PROPERLY REFUSED AS INVADING PROVINCE OF JURY.**

In a homicide case, the court properly refused, as invading the province of the jury, a requested instruction: "If from all the evidence you are reasonably satisfied that the deceased was in any way offended with defendant because of a real or imaginary winking or squinting of his eye, and you are reasonably satisfied from all the evidence that this winking or squinting of the defendant's eye was involuntary, this would not put the defendant in the wrong, or be a provoking or bringing on of the difficulty, or a willing entry into the fight."

**17. CRIMINAL LAW ⊕⟿364(1)—SECOND SHOT ADMISSIBLE AS RES GESTÆ, THOUGH DEATH RESULTED FROM FIRST.**

In a homicide case, where there were two shots fired by defendant only a few seconds apart, and the first shot was the fatal one, all of the facts and circumstances attendant upon the firing of both shots were part of the res gestæ, and proper to be considered by the jury.

On Rehearing.

**18. COURTS ⊕⟿42(1) — ACT CREATING COURT HELD NOT TO REPEAL FORMER STATUTE.**

Loc. Acts 1919, p. 12, amending acts 1909, p. 14, providing for a branch of the circuit court of Marshall county, does not repeal it, and the court still remains as a branch of the circuit court of Marshall county, and the old court is not abolished.

**19. CRIMINAL LAW ⊕⟿814(1)—REQUESTED INSTRUCTIONS MUST BE PREDICATED ON SOME PHASE OF CASE.**

Court in criminal trial will not be put in error for refusing a charge which is not predicated on some phase of the case.

Appeal from Circuit Court, Marshall County; W. W. Harralson, Judge.

C. Kuykendall was convicted of manslaughter, and he appealed. Affirmed.

Certiorari denied, 87 South. 882.

The following is the argument of counsel objected to:

"Gentlemen, you know as a matter of common knowledge that a shot that entered the eye and went through the brain would kill a man instantly."

The following charges were refused the defendant:

(2) "You should endeavor to ascertain from all the evidence in the case what purpose and motives prompted the defendant."

(3) Identical with 2.

(7) "If the evidence shows that on previous occasions Edmonson had endeavored to draw the defendant into a combat with him, and the defendant showed an unwillingness to do so, you may consider that fact in connection with the balance of the testimony as shedding light upon his willingness or unwillingness on his part to enter into combat with Edmonson on the occasion of the killing."

(9) "If the defendant was on the front porch for a peaceful purpose, then his failure to retreat into the dwelling when the difficulty arose cannot be looked to as a circumstance tending to prove that the defendant fought willingly."

(40) "The fact that the defendant did not go into his house, if threatened with an attack, cannot be considered by the jury as a circumstance against him."

(39) "If the defendant was free from fault in provoking or bringing on the difficulty in question, he was under no duty to retreat, no matter how much he may have been in the wrong in any other difficulty between him and the deceased, and there has not been and could not be any evidence offered to show you that he was at fault in any other difficulty."

(37) "If the defendant killed Edmonson, at a time when the circumstances surrounding and known to him were such as to create in the mind of a reasonable man, and did create in the defendant's mind, the reasonable and honest belief that he was in danger of losing his own life, or of sustaining serious bodily harm, and if the plaintiff had not proved to your reasonable satisfaction in this case that the defendant was on the occasion of the killing at fault in bringing on the difficulty, then the defendant had a right to kill the deceased, and the law does not require that the defendant should, at the time of the killing, have felt

pangs of regret over the necessity of taking the deceased's life."

(45) "A person without fault in bringing on a difficulty, and threatened with an attack with a deadly weapon, which reasonably creates in the mind of the defendant as a reasonably cautious man a reasonable and honest belief that he is in danger of sustaining the loss of his life, or of sustaining grievous bodily harm, is not required to wait until the attack is actually made, but may act upon such reasonable appearances, and himself make the first attack and kill his adversary, if it reasonably appears necessary to do so for protection to himself, and may continue to attack until he knows that he is freed from such danger."

(21) "If from all the evidence you are reasonably satisfied that the deceased was in any way offended with defendant because of a real or imaginary winking or squinting of his eye, and you are reasonably satisfied from all the evidence that this winking or squinting of the defendant's eye was involuntary, this would not put the defendant in the wrong, or be a provoking or bringing on of the difficulty or a willing entry into the fight."

(43) "If you are reasonably satisfied from the evidence that the first shot fired by the defendant caused the death of Edmonson, and that the second shot did not hit sufficiently to cause his death, then the result of your verdict must depend upon the circumstances and appearances surrounding the defendant at the time of the firing of the first shot."

John A. Lusk & Son and Street & Bradford, all of Guntersville, for appellant.

It was proper that the jury should be informed of the character of the dispute or quarrel existing between the parties, so as to determine whether or not it was serious or trivial. 73 Ala. 5; 177 Ala. 15, 59 South. 171. Court erred in reference to the buggy. 71 Fla. 585, 72 South. 180; 1 Wharton, Evidence, 1555. Declaration of the deceased, coupled with his conduct showing a disposition, purpose and readiness to assail defendant with a deadly weapon, are admissible. 79 Ala. 9; 78 Ala. 474, 56 Am. Rep. 45; 86 Ala. 1, 5 South. 426. The objection to the argument of counsel should have been sustained. 181 Ala. 90, 61 South. 801; 115 Ala. 69, 22 South. 541; 13 Ala. App. 105, 69 South. 306; 12 Ala. App. 46, 68 South. 504. Charges 2 and 18 should have been given. 25 Ala. 30; 1 Mayfield, 800. Charges 9, 26, 39, 40, and 42 should have been given. 177 Ala. 24, 59 South. 270; 2 Ala. App. 81, 57 South. 134; 8 Ala. App. 46, 62 South. 977. Counsel discuss other assignments of error relative to charges, but they cite no further authority.

Local Acts 1919, p. 12, repealed the former act, and created a new court. 148 Ala. 394, 41 South. 903; 186 U. S. 95, 22 Sup. Ct. 776, 46 L. Ed. 1070; 106 U. S. 395, 1 Sup. Ct. 312, 27 L. Ed. 60; 11 Wall, 88, 20 L. Ed. 153; 13 How. 29, 24 L. Ed. 36.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

No brief reached the Reporter.

MERRITT, J. The defendant was originally indicted for murder in the first degree, and was tried and convicted of manslaughter in the first degree, and on appeal the case was reversed. Kuykendall v. State, 16 Ala. App. 197, 76 South. 487. Upon the second trial the defendant was again convicted of manslaughter in the first degree, and his punishment fixed at three years in the penitentiary, and from this judgment of conviction he appeals to this court. There are 52 assignments of error.

[1] By assignment of error numbered 4 appellant insists that no predicate was laid for the introduction of contradictory statements, as shown by the testimony of one McNaron. We do not understand that the testimony of the witness McNaron, who was shown to be dead, as disclosed by the showing, was offered on this trial for the purpose of contradicting the defendant, but for the purpose of showing a threat, or ill will on the part of the defendant toward deceased, and the fact that on the former trial of this case this testimony was offered for another purpose, or at another time during the former trial, cannot, for that reason, make it incompetent here; it being otherwise competent. No error was committed by the trial court in overruling the defendant's objections to that portion of the showing referred to.

[2] The defendant testified that on one occasion he and deceased were drunk together, and deceased beat him up terribly. Defendant then offered to prove (by himself) that this was six years before the tragedy, and that as deceased and defendant were driving along the road, sitting in the buggy, deceased knocked defendant out of the buggy and drove over him, back and forth. The court sustained an objection to this made by the state, and the ruling is free from error. While evidence of previous difficulties may be admissible, it is not permissible to prove the particulars thereof. Robinson v. State, 155 Ala. 67, 45 South. 916.

What is said in regard to the above also applies to assignment numbered 6.

[3, 4] It appears from the testimony that the buggy in which the deceased was riding at the time of the killing was in front of the courtroom at the time of the trial; that it had not been used since the tragedy, and that it was in the same condition as at the time of the occurrence, and that the jury was permitted to view and inspect it, the court charging them as follows:

"Gentlemen of the jury, the court instructs you, before you go out there, it is not proper for you after you have viewed the buggy to

discuss or call one another's attention to the shot you saw, or talk about it while doing the viewing. Look at it as much as you want to, put your hands on it if you want to. The buggy is offered to you, not for the purpose of original testimony so much, but to illustrate the testimony you have already had. Gentlemen, when you walk out, every one will be moved out of the way, but you will view and look at it as much as you want to examine it. Don't talk about it while doing it; don't exchange your views about it now. You may look at it as long as you want to or desire to, and that is only done for the purpose of helping you understand the evidence with reference to it, and then, after you have done that, the officers will take you and let you go to your room, and bring you back here at 8 o'clock in the morning."

The defendant excepted to the court's refusal to give certain written charges. Conceding, without deciding, the right of the defendant to ask for written charges in this manner, it plainly appears that the statement of the court to the jury as to just how they were to view the buggy and consider it was a correct statement of what they should do in the premises, and practically covers the refused written charges. Besides, it is not shown that the jury did any of the things, concerning which the refused written instructions dealt, or that any injury was done the defendant, in any wise, by anything that may have transpired in connection with its viewing the buggy.

[5] There was no error in refusing to allow the witness Dollar to testify that on one occasion Edmonson, when he met witness in the road, stepped to one side, and said to witness, "I will kill you if you drive that buggy over me." This was clearly incompetent. This was a threat against witness, not the defendant. What Edmonson said in regard to defendant was allowed, and that without objection.

[6] It was not competent for the defendant to show by his son "that a night or two before the killing, as he came into the defendant's house, he saw some one loitering around the rear of the house, and the person ran off as witness approached the house." There was no evidence showing that the person was the deceased, or that he was there for any improper purpose, or that he was there, if there, by or with the aid, knowledge, or consent of deceased, or that deceased had any connection with his being there.

[7] There was no error in refusing to exclude the argument of counsel to the jury to which an exception was reserved. This was a matter of argument and conclusion on the part of counsel which he was seeking to impress upon the jury. King v. State, ante, p. 536, 87 South. 701.

[8] Charges 2 and 18 were properly refused. It is not indispensable that the state should prove a motive for the commission of the crime. Morris v. State, 146 Ala. 66, 41 South. 274.

[9, 10] Charge 7 was faulty in one respect at least. It called for a determination of the facts of former difficulties, when, as a matter of law, the fact only that there had been a former difficulty was permissible to go to the jury, and is also argumentative.

[11] Charges 9, 26, and 42 are practically covered by given charges 15, 16, and 17, conceding them to be proper charges.

[12] Charge 9 was condemned in the case of Kuykendall v. Edmondson, 200 Ala. 650, 77 South. 24.

[13] Charge 40 was an undue singling out of a part of the evidence, and tended to pretermit certain duties required of the defendant under his plea of self-defense. Besides, the doctrine of retreat was clearly covered by the court's oral charge and several written charges given at the request of the defendant.

[14] Charge 39 is argumentative and misleading.

Charge 12 is practically covered by written given charge 23.

Charge 13 is practically covered by given written charge 14.

Charges 14 and 35 are argumentative, and are practically covered by other given written charges.

Charge 36 is practically covered by given written charge 23.

Charge 37 is practically covered by given written charge 23, except the last part, which is abstract and argumentative.

[15] Charge 45 is misleading and confusing, if not subject to other vices.

[16] Charge 21 invades the province of the jury, and was not a good charge.

[17] Charge 43 was properly refused. All of the facts and circumstances attendant upon the firing of each shot, it being shown that there was only a few seconds difference, were parts of the res gestæ, and proper to be considered by the jury.

We find no error in the record, and the judgment of conviction is affirmed.

Affirmed.

On Rehearing.

[18] In point 6 on the last page of appellant's brief, in support of application for rehearing, counsel say:

"There is a question not passed on in the opinion of the court, and not urged in our original brief, namely, assignment No. 1. We submit that Local Acts 1919, p. 12, repealed the former act creating the Albertville branch of the circuit court of Marshall county, and that by the act of 1919 a new court was created. The mere fact that the last act is called an amendment makes no difference. We submit that the following cases are conclusive in this point [citing certain cases]. A new court cannot entertain cases brought in an old and abolished court, in the absence of express provision

to that effect. We submit, therefore, that defendant's motion to strike the case from the docket should have been granted."

Under act approved August 18, 1909 (Acts 1909, p. 14), provision is made for a branch of the circuit court of Marshall county, the same to be held at Albertville twice each year. Section 2 of the act provided that the court should have original jurisdiction to try and determine all causes, civil and criminal, arising in certain precincts, and section 9 of the act provided that all causes then pending in the circuit court of Marshall county, where the cause of action arose within the jurisdiction of said circuit court at Albertville should be set down for trial at the first term of the circuit court at Albertville.

Act approved February 7, 1919 (Local Acts 1919, p. 12), amends the 1909 act, but there is no basis on which the contention, made by appellant, that the 1909 act is repealed and a new court created, can rest.

The 1919 act does amend the 1909 act by more clearly defining the jurisdiction of the court and by providing a method for procuring juries for the court, as well·as in other minor particulars, but the court still remains as a breach of the circuit court of Marshall county.

Appellant's argument upon this point is probably predicated upon the fact that no section appears in the 1919 act corresponding to section 9 of the 1909 act, by the provisions of which all cases then pending in the circuit court of the county which arose in the Albertville district were transferred to the Albertville docket. No clause of that nature was necessary in the 1919 act, as all cases in the Albertville district were already on the Albertville docket.

The cases cited by appellant in this connection hold that where a law is passed, purporting to amend an existing law, and the provisions of the latter are in conflict with the provisions of the former, the former law is repealed by the latter, in so far as the conflict exists.

There is no ground for this line of argument in this case, as the 1919 act does not conflict with the 1909 act in any particular, so far as the creation of this wing of the court in 1909 and its continued existence as such up to the present time is concerned.

"A repeal is properly defined to be 'the abrogation or destruction of· a law by a legislative act.' Amendment in legislation is 'an alteration or change of something proposed in a bill or established as law.' Bouv. Dictionary." State, etc., v. Hubbard, 148 Ala. 391, pp. 394-395, 41 South. 903, 905.

The 1919 act does not in any sense destroy or abrogate the 1909 act, but merely makes certain changes in the 1909 act. However, no change is even made so far as the existence of the court is concerned.

[19] Charge 23 was substantially covered by given written charge 10—besides the court will not be put in error for refusing a charge which is not predicated on some phase of the evidence.

The application for rehearing is overruled.